143  595
149  114
143       595
30 SC 1301

———————•◦•———————

## P. S. DUNCAN ET AL. v. J. L. HARTMAN.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS OF BLAIR COUNTY.

Argued April 21, 1891—Decided October 5, 1891.

1. An agency to "manage," implies authority to do with the property what has previously been done with it by the owners, or by others with

Statement of Facts.

their express or implied consent; or, further, to do with it what it is usual and customary to do with property of the same kind in the same locality.

2. An agent to "diligently manage" real estate, chiefly wild mountain land, for a period of one year, has, prima facie, no authority to execute to another person an exclusive grant to quarry, take, and sell stone from the land of his principal for a term of fifteen years.

3. Such a grant, however, may be validated by showing a previous course of dealing with the land by the owners and the agent, which give a construction by the•parties themselves to the agent's authority under his written employment, or that the owners knowingly received rents without objection.

4. But, the burden being on the grantee to show a course of dealing which would enlarge the prima-facie powers conferred by the employment, it is the province of the jury, though the evidence be undisputed, to determine therefrom whether the grantee had met this burden to their satisfaction.

5. The lease in this case was signed by the agent of the owners, merely as agent. But, reciting the names of the owners as his principals, and purporting to be a grant, not in his own right but as agent, if supported as stated, its informal execution would not leave the grantee in possession liable as a trespasser.

Before PAXSON, C. J., STERRETT, WILLIAMS, MCCOLLUM and MITCHELL, JJ.

No. 143 July Term 1890, Sup. Ct.; court below, No. 58 October Term 1888, C. P.

On August 4, 1888, a statement of claim was filed in trespass, brought by P. S. Duncan and others against Jesse L. Hartman. Issue.

At the trial on May 26, 1890, an agreement was given in evidence waiving proof of plaintiffs' title to the lands the locus in quo of the alleged trespass, the contention being as to the validity of the lease under which the defendant claimed. Having proved acts of the defendant upon the plaintiffs' land, by way of taking ganister stone therefrom in 1887 and 1888, and the amount thereof, the plaintiffs rested.

The defendant then offered in evidence a power of attorney to James M. Cooper executed under seal by John W. Duncan, Peter S. Duncan and Angelo T. Friedley, attorney in fact, bearing date January 15, 1886, as follows:

"Know all men by these presents that we, John W. Duncan, Peter S. Duncan, and A. T. Friedley do hereby employ James M. Cooper to act as our agent for our properties, situated in

Bedford and Blair counties, Pennsylvania; and if the said Cooper shall honestly and diligently manage said properties, we do hereby agree to pay him the sum of seven hundred dollars for a period of one year from the first day of April, A. D. 1886, and agree to find the said Cooper house rent, fuel delivered at his house, horse, buggy, horse feed and cow pasture without charge, and traveling expenses necessarily incurred in our behalf; said Cooper on his part undertaking to provide and furnish a boy to attend horses, cows, cut wood, go errands," etc., etc.

The offer was objected to, because the paper did not give any power or authority to James M. Cooper, or any one under him, to go upon the property of the plaintiffs and commit the trespass shown to have been committed.

By the court: Objection overruled, offer admitted; exception.[8]

The defendant then proved and offered in evidence the following paper:

"This agreement, made and concluded this 8th day of January, 1887, by and between James M. Cooper, agent for the Duncan heirs, of the one part, and J. L. Hartman, of McKee's Gap, Blair county, Pennsylvania, of the other part, witnesseth, that the said James M. Cooper, agent, doth lease or let unto the said J. L. Hartman, the sole and absolute right and privilege to quarry, take and sell any or all the ganister stone off the south end of what is known as Short mountain, and also off the north end of what is known as Dunning's mountain, the space of said ends to comprise one mile either way, northward or southward, from the centre of that portion of said mountain, facing the Gap, known as McKee's, for the term of fifteen years from the first day of January, 1887.

"For and in consideration of which the said J. L. Hartman agrees to pay the said Duncan heirs or their agent seventy dollars per year for each and every year, payment to be made in advance.

"It is further agreed that the said J. L. Hartman may cut and use timber from the above named lease, as much as may be necessary to build chutes and planes. And further, that this agreement is not transferable to any other person or persons.

Charge of Court below.

" In witness whereof we have hereunto set our hands this day and year above written.

"J. M. COOPER, Agent,    [SEAL.]
"J. L. HARTMAN."

Objected to : This paper is signed, " J. M. Cooper, Agent;" if he had the power, under the first paper offered, to make a lease of this kind, then he has not executed that power in the manner provided by law : he should have introduced the names of his principals, and he should have signed it in their names.

By the court: Objection overruled for the present, offer admitted; exception.[9]

J. M. Cooper was then called by the defendant and testified that, little and big, he had altogether fifteen farms belonging to the Duncan heirs, in his control as their agent, the principal part of the land wild mountain land; and that, under a like power of attorney he had previously leased the ganister on Short mountain to J. K. McLanahan. The lease to McLanahan, which was for seven years,- being identified by the witness, it was offered in evidence for the purpose of showing " Mr. Cooper's course of conduct and his powers." Objected to.

By the court: Objection overruled, offer admitted; exception.[10]

The witness testified, further, that the McLanahan lease was canceled on January 3, 1887, upon the request of McLanahan, and that the rents received while it was in force were accounted for to the plaintiffs, who had knowledge of their source ; that other prior leases of long terms had been made by him under like powers of attorney. There was some testimony, however, tending to show that the McLanahan lease was made with the knowledge of the landowners ; also that defendant Hartman paid rent under his lease which was accounted for by the agent to his principals, and that the latter had regularly examined the agent's books and accounts submitted to them.

The case being closed, the court, DEAN, P. J., charged the jury in part as follows :

It is alleged by the plaintiff that this lease made to Hartman was in fact a conveyance of the land; that it was all the stone upon a certain specified territory, to be taken within a limited

Charge of Court below.

period; that this constituted all the value the land had, and
when the stone was taken the land was valueless.  The defend-
ant alleges that the contract with Hartman was for a fixed
term, fifteen years, not an unusual term in view of the neces-
sary expenditure of money to develop the property for the pur-
pose for which Hartman leased it; that the stone had been
taken mainly on the surface, and whether he took few or many,
the limit in which he must take them was a comparatively
short one, in view of the expenditure it was found necessary
that he should make ; and that the power to make such a lease,
the defendant alleges, is clearly implied from express general
agency for the property, and the nature of the property he was
to manage.

Without undertaking to decide clearly and certainly, from
the construction of the written appointment, that it embraced,
from its terms, a power to make such a contract, we are of the
opinion the parties could give it, by their conduct, such mean-
ing.  The words " as agent for our properties " fix no precise
line as limiting the agent's duties.  Necessarily, with such a
property, consisting of so many and such diverse interests, it
would be difficult to specify in detail, at least with precision,
the agent's authority in the instrument itself.  If the parties
to it, by a course of conduct under it, clearly signified their
understanding that the agent had power to execute this con-
tract, there is no reason why we should seek to limit his au-
thority to anything less.  It is not unjust to any one, if we
adopt the construction the parties themselves put upon their
instrument.

The defendant alleges that it was treated by both parties, the
Duncan heirs and Cooper, as a power to make leases ; that for
years he did make leases under this and a similar power of at-
torney, and those were not questioned by the plaintiffs.  The
plaintiffs allege he made no leases or contracts such as this one,
except after consultation with his principals.  These facts, how-
ever, appear undisputed here in the case : That Cooper made
leases of the farms, of which there was quite a number, for fixed
terms, generally from one to three years, or from year to year.
In one instance, he testifies he made a lease for nine years.  He
leased this ganister stone first to Andrew Bice, then for seven
years to J. K. McLanahan.  This was under a previous power

Charge of Court below.

of attorney, but one which Cooper testifies was the same as this, but which has not been produced.   Cooper says he has searched for it but cannot find it; but his evidence as to its existence and contents is not here contradicted.   He accepted the surrender of McLanahan's lease and canceled it before the expiration of the term, and his act was not questioned.   From the conduct of the parties, it is urged by the defendant, that Cooper's agency was uniformly treated as embracing power to make leases; and that he did lease this stone twice before the present contract with Hartman, and his authority to do so was not questioned by the Duncan heirs, his principals.

[The plaintiffs, while admitting that Cooper made leases of the farms for short terms, leases involving nothing more than the use and occupation of the surface for agricultural purposes, deny that he had any power under his general agency to lease or grant away ganister stone, which, under the circumstances, was the land itself.   As to McLanahan's lease, it is averred it was made only after consultation with his principals.   This seems to be the fact, as proven by Duncan and McLanahan. Cooper, before making this lease to McLanahan, did consult his principals, and they acquiesced verbally in the lease; and, as I understand the plaintiffs' contention, if this lease had been made after consultation with his principals, Cooper's act would have been valid.   One thing, however, here, is clear and not disputed: Cooper did, before this contract, execute leases of different parts of the property, and made contracts for this very ganister stone for a term of years.   These contracts were made under his appointment as " agent for our properties."   He had no other or different appointment than this one.   Admit that he did not exercise power in reference to McLanahan's lease or at any other time, except after consultation and oral acquiescence of his principals; admit that it must have been wise first to consult them and secure their oral approval; still his authority to execute the contract came not from the consultation, but from the written appointment as agent.   The extent of the power to make the contract is proved by the very fact of consulting them; they gave him no additional power by acquiescing with him.   He had the power, and they advised or consented to his exercising the power, in that particular case, which they had already given.   When they went to a consultation, they deter-

Charge of Court below.

mined whether it was wise in that particular case for him to exercise the power, not that they were then giving him, but that he already possessed, to make such a contract.   Whatever our construction of this paper might have been, in the absence of evidence as to the course of conduct of the parties with reference to it, it is undisputed here on the evidence that the parties themselves uniformly treated it as a power to lease, to make just such leases as this one.] [5]

[Now, as to the plaintiff's fourth point, " that the agreement of January 8, 1887, between J. M. Cooper and J. L. Hartman, not being executed in the name of the principals, is therefore not obligatory on them ; and Hartman cannot justify his act of taking the ganister under the agreement." We are of the opinion that the paper itself fully discloses the agency of Cooper and who were his principals ; and the omission to sign the names of his principals does not, for that reason, make the paper defective.   If we assume, as the plaintiffs claim, that there was no authority in Cooper to make the contract, and even if there were, it was so defectively executed that it could not be enforced, then would come the question whether, under the evidence, the plaintiffs were estopped from denying the defendant's right.   Hartman did take possession, made valuable improvements, and paid his money under the contract, which money entered into the funds of the plaintiffs and was used for their benefit.   There has been no return or offer to return the money before suit was brought.   But, in view of our opinion on the first question raised by the construction of the lease, it is not necessary for us to pass on this one ; and we, under the whole evidence here on the issue, instruct you to find a verdict for the defendant.] [7]

The plaintiffs ask us to say :

1. That the agreement dated January 8, 1887, between James M. Cooper, agent, and J. L. Hartman, wherein " the said James M. Cooper, agent, doth lease or let unto the said J. L. Hartman the sole and absolute right and privilege to quarry, take, and sell any or all of the ganister stone off the south end of what is known as Short mountain, and also off the north end of what is known as Dunning's mountain," by its language conveys an interest or estate in the lands enumerated.

Answer: Our answer to this is, the agreement does vest in

Charge of Court below.

the lessee, during his term, an interest in the land embraced in the contract.

2. That the agreement or letter of attorney from John W. Duncan, Peter S. Duncan and A. T. Friedley to James M. Cooper, dated January 15, 1886, employing the said James M. Cooper to act as the agent of the plaintiffs and manage their properties, does not authorize Mr. Cooper to grant or convey any estate in the lands of the plaintiffs; and therefore, the agreement or lease under which the defendant claims the right of taking the ganister is void, and the defendant cannot justify his taking and shipping of ganister from these lands under that agreement with Cooper.

Answer: This point is denied.[1]

3. That, under the agreement or power of attorney from the Duncans to Cooper, he was employed as their agent to manage their properties; and even viewed in the light of the parol testimony offered as to the extent of his powers, it is not sufficient to authorize him to make such a contract as that of January 8, 1887, with Hartman.

Answer: This point is denied.[2]

4. That the agreement of January 8, 1887, between J. M. Cooper and J. L. Hartman, is not executed in the names of his principals; and therefore it is not obligatory on them, and the defendant cannot justify his taking of the ganister under that agreement.

Answer: This point is denied.[6]

The defendant asks us to charge you as follows:

1. By the power of attorney from the plaintiffs to James M. Cooper, he was fully authorized to make chattel leases of the properties of the plaintiffs, and he was not thereby restricted to the execution of leases for terms of three years or less, as alleged by the plaintiffs.

Answer: Our answer to this point is, that we have already answered it in what we have said to you. . Whatever construction might be put upon the agreement, taking it by itself, the construction put upon it by the parties themselves is here in evidence and not a matter of dispute, and that was that he had the right to make such leases. We adopt the construction put upon it by themselves.[3]

3. If the jury find that, under previous powers of attorney

Arguments.

identical in substance with that of 1886, and by approval of his principals, Cooper made leases of the ganister, and under the last power canceled a seven years' lease to J. K. McLanahan, such facts are to be considered as evidence of the agent's authority to lease the ganister.

Answer: This point is affirmed.[4]

4. If the defendant entered under his lease in the spring of 1887 and expended a large amount of money in making valuable improvements by railroad sidings and inclined planes in order to reach the ganister, and paid his rent, and at the instance of the agent, Cooper, advanced to him money sufficient to pay the rents up to 1891, which were used by him in paying taxes and other debts of the plaintiffs and with their knowledge, they are estopped from questioning the validity of the lease.

Answer: This point is not material in the view we take of the other question.

—The jury returned a verdict for the defendant. Judgment having been entered, the plaintiffs took this appeal, assigning for error:

1, 2, 6. The answers to the plaintiffs' points.[1] [2] [6]

3, 4. The answers to the defendant's points.[3] [4]

5, 7. The parts of the charge embraced in [ ][5] [7]

8–10. The admission of the defendant's offers.[8 to 10]

*Mr. H. M. Baldridge* and *Mr. Alexander King*, for the appellants.

That the agent was without power to make the lease, counsel cited: Duke v. Hague, 107 Pa. 57; Brown v. Beecher, 120 Pa. 599; Stoughton's App., 88 Pa. 201; Ashley v. Bird, 1 Mo. 640 (14 Am. Dec. 313); Hunter v. Sugar Co., 11 Fed. R. 15; Reese v. Medlock, 27 Tex. 120 (84 Am. Dec. 611); Billings v. Morrow, 7 Cal. 171 (68 Am. Dec. 235); Wright v. Burbank, 64 Pa. 247; Pittsb. etc. R. Co. v. Gazzam, 32 Pa. 340. That, even if given, the power was not properly executed: Heffernan v. Addams, 7 W. 116 (9 W. 535); Bassett v. Hawk, 114 Pa. 504; Elwell v. Shaw, 16 Mass. 42; Story on Agency, § 147; 2 Kent Com., 3d ed., 629; Clarke v. Courtney, 5 Pet. 318.

*Mr. Martin Bell* (with him *Mr. John D. Blair*), for the appellee.

Opinion of the Court.

As to the character of the leasehold granted, counsel cited: Doe v. Wood, 2 B. & Ald. 724; Funk v. Haldeman, 53 Pa. 229; McClintock's App., 71 Pa. 365; Brown v. Beecher, 120 Pa. 590; Duke v. Hague, 107 Pa. 57; Johnstown Iron Co. v. Cambria Iron Co., 32 Pa. 241; Stoughton's App., 88 Pa. 198. That the power of attorney authorized the execution of the lease: Weightman v. Harley, 20 W. N. 470; Williams v. Getty, 31 Pa. 461; Gallinger v. Traffic Co., 67 Wis. 535; Story on Agency, § 74. That the power was sufficiently executed: Smith's App., 69 Pa. 474; Monocacy Bridge Co. v. Mfg. Co., 83 Pa. 517; Taylor v. Agricultural Ass'n, 68 Ala. 229; and that the receipt of the rents estopped the plaintiffs: Law v. Cross, 1 Black 533; Wood on L. & T., 201; Blewett v. Coleman, 40 Pa. 52; Bredig v. Dubarry, 14 S. & R. 27; Le Fevre v. Le Fevre, 4 S. & R. 241; Rerick v. Kern, 14 S. & R. 267; Thompson v. McElarney, 82 Pa. 177.

OPINION, MR. JUSTICE MITCHELL:

The title to the land being admitted in plaintiffs, the defendant had the burden of showing that his act was not a trespass. This he undertook to do by the written agreement between himself and Cooper; and as that set out in express terms that Cooper was acting as agent for the Duncan heirs, defendant was bound to show that it was within Cooper's authority as such agent. Cooper's authority was in writing, and was " to act as our agent for our properties . . . . . and honestly and diligently manage said properties." The delegation of power, here, is very general, but also very vague; and its precise limits must depend very largely on the circumstances as shown by the evidence. It is conceded that it would not authorize the sale of the land, while on the other hand it is equally clear that it would authorize leases in the ordinary form for ordinary terms. Between these extremes may be a series of more or less debatable acts, as to which the only rule that can be laid down as matter of law, is that an agency to manage implies authority to do with the property what has previously been done with it by the owners, or others with their express or implied consent; or further, to do with it what is usual and customary to do with property of the same kind in the same locality. Thus, farming land could be leased for terms and

upon conditions usual for farms in the neighborhood. If there was an open mine on the land, the management of the property would include the working or leasing of it in any way usual for such mines; while the opening of a mine on land which had never been mined before, would be a more doubtful act, and, except in a mining country, would not prima facie come within the terms of such an agency.

The agreement between Cooper and defendant granted the latter the sole right to quarry, take and sell ganister stone from a certain tract of land for the term of fifteen years. Without going into the niceties of distinction between licenses, chattel interests, and sales of minerals in situ, as sales of the land, it is sufficient for the present case to say that, while the grant from Cooper to defendant was more than a license, because it passed an exclusive interest in the land for certain purposes for the specified term, it was less than a sale, for the term was limited, and stone not actually taken would remain part of the land and revert to the lessor at the end of the term. It was therefore a lease, a chattel interest within the case of Brown v. Beecher, 120 Pa. 590. But the inquiry still remains whether it was such a lease as is ordinarily given in the management of land similarly situated. Prima facie we do not think it was. It is a restriction upon the owner's control of his land for a term of fifteen years; and yet it is given by an agent who was appointed for a single year, which had nearly expired. It was not a grant of a right to take an annual profit which would be replaced by nature, so that the land would come back to the owner in the same condition that it left his control, but a diminution of the body of the land itself, to the permanent diminution of its value. It was analogous to the opening of a new mine, which is a damage to the inheritance, and, as such, is held to be waste in a life-tenant. Such a grant cannot fairly be held to be within the power of an agent for the general and ordinary management of property. The jury, therefore, should have been instructed that the lease from Cooper was prima facie beyond his authority, and no justification for the defendant's acts.

It was competent, however, for the defendant to show that the circumstances made the lease valid. This he might do in several ways. First, by showing that this was a usual and cus-

EASTERN DISTRICT, 1891.

Opinion of the Court.

tomary way of dealing with land of that kind in that neighborhood. Or, secondly, by showing a previous course of dealing with this land by the owners and the agent, which gave a construction by the parties themselves to the agent's authority under his written employment. This view of the case was discussed by the learned judge in his charge, but he fell into error in ruling it himself, instead of leaving it to the jury. No matter how undisputed the evidence was, its sufficiency was for the jury. The burden was on the defendant to show a course of dealing which would enlarge the prima-facie powers conferred by the writing, and it was the province of the jury to determine whether the evidence met this burden to their satisfaction. The prior leasing of the ganister to other parties, Bice and McLanahan, was evidence of the willingness of the owners to have this land utilized in this way, and to that extent reduces the force of the objection that this was an extraordinary and uncontemplated act of management. But the McLanahan lease, which approximates most nearly to defendant's, seems to have been made with previous consultation and consent of the owners, and would get its validity from such consent rather than from Cooper's written authority. The other special instances of long leases, to Delosier, etc., with the attendant explanations and circumstances, were proper for the consideration of the jury, and it was not necessary that they should have been made under the identical authority to Cooper, of January, 1886. A course of dealing may be as well shown under a series of successive, if substantially similar papers, as under one.

Thirdly, defendant was entitled to show that the owners had received the rent which he paid Cooper, or allowed Cooper to use it for their benefit, without objection. This would be evidence of ratification by estoppel; and the jury would be bound to consider the entry of the money on Cooper's books, the accounts that he sent to his principals, their opportunities and habit of examination of his book entries, the circumstances of the handling of the check of the Ganister Company to Duncan, in October, 1887, and the various versions of the conversation that then took place between him and Cooper, etc., etc., as bearing upon the question whether the plaintiffs accepted the money as part of Cooper's receipts on their behalf, knowing, or having such notice that they were bound to know, that it came from defendant as rent under the lease in dispute.

If the jury should find for the defendant, under the foregoing principles, the informal execution of the lease by Cooper would not stand in the way. It purports to be a grant from Cooper, not in his own right, but as agent, and his principals are named as " the Duncan heirs," by which it appears to be conceded is meant the plaintiffs. It is not at all analogous, therefore, to Bassett v. Hawk, 114 Pa. 502, and similar cases, where the instrument purported to grant the attorney's own estate, only, without connecting his principal at all.

Judgment reversed, and venire de novo awarded.

