## Mott et al. *v.* Kaldes, Appellant.

*Statute of frauds—Power of attorney—Parol evidence—Lease of real estate—Ten years' lease—Invalidity of lease executed by attorney—Payment of rent—Ratification—Estoppel — "Feeding the fee"—Act of March 21, 1772, 1 Sm. L. 389.*

1. Where particular acts are authorized by a power of attorney and general language is also used in the same instrument, the latter is to be limited in its application to the special objects of the power.

2. Letters of attorney are to be strictly interpreted by the courts and special powers therein are not to be extended unless clearly so intended.

3. Where a letter of attorney grants to the attorney specific and not general powers to collect moneys and pay taxes and debts, but confers no express power to lease or sell real estate, the attorney cannot execute a lease of real estate for a term of ten years, and this is the case although the letter contains general words authorizing every act "needful and necessary to be done about the premises, and in the conduct and management of my affairs and estate."

4. The added words were held limited to transactions growing out of the special objects to which the instrument referred; parol evidence was held not admissible to enlarge the letter of attorney: Duncan v. Hartman, 143 Pa. 595, distinguished.

5. Such a lease contravenes the Statute of Frauds Act of March 21, 1772, 1 Sm. L. 389.

6. Where a statute requires written authority to enable an agent of a lessor to make a lease longer than a stated period, if an agent without written authority makes such a lease, an oral ratification or confirmation thereof, by the lessor, can give to the lease no greater force or effect than it would have had if the lessor had himself originally made it by an oral agreement.

7. In such case, the receipt of rent by the lessor, or knowledge that it was being paid in accordance with the terms of the lease, cannot give force and effect to the lease by way of ratification; nor can it work the same result by way of estoppel.

8. Where a daughter, under a letter of attorney from her mother, executes a lease of real estate for ten years, without authority under the letter, and contrary to the statute of frauds, and subsequently succeeds to the title of the real estate during the term of the lease, such succession to the title can not, by way of estoppel, or on any other theory, take the lease out of the statute of frauds.

9. In such case there can be no application of the doctrine designated as "feeding the fee," which is invoked where a party purporting to be the owner of property makes a conveyance and, having had no previous ownership, subsequently acquires it, is then estopped from denying his ownership.

10. Where all parties concerned either know or have full opportunity to know the facts, but misconceive the law which applies to such facts, and an agent's authority is the point concerned, neither the agent nor the principal are bound by an unauthorized exercise of such authority.

11. Where a lease for ten years, executed by an agent of the owner in violation of the statute of frauds, is duly recorded, and the facts relating to the letter of attorney under which the agent acted and the execution of the lease are known to both parties, there can be no estoppel; the fact that the lessee did not know as a matter of law that the agent had no power under the letter to execute the lease will not help him.

12. The statute of frauds as a declaration of public policy, must be followed, even though those who incidently benefit, under the circumstances present in a particular case, seem not to be equitably entitled.

Argued November 30, 1926.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 46, Jan. T., 1927, by defendant, from decree of C. P. Lackawanna Co., Jan. T., 1925, No. 10, in equity, for plaintiffs on bill in equity, in case of George

266        MOTT et al. *v.* KALDES, Appellant.

S. Mott, Jr., et al., by the Scranton Trust Co., Guardian,
v. Paul Kaldes.  Affirmed.

Bill to cancel lease.  Before MAXEY, J.
The opinion of the Supreme Court states the facts.
Decree for plaintiffs.  Defendant appealed.

*Error assigned* was, inter alia, decree, quoting it.

*John P. Kelly,* with him *C. B. Little,* for appellant.—
In connection with the interpretation and construction
of this power of attorney, we contend that the court has
the right to look to the relation of the parties and the
circumstances surrounding them at the time the lease
in question was entered into: Duncan v. Hartman, 143
Pa. 595.

Though Mrs. Miller had not the slightest shred of
authority to execute this lease, yet Mrs. Durr might
ratify and confirm it.

Acceptance of rent creates an estoppel: Trout v. Mc-
Donald, 83 Pa. 144; Myers v. Coal Co., 126 Pa. 582.

*Francis Shunk Brown,* with him *Ralph W. Rymer,* for
appellees.—The letter of attorney did not confer au-
thority on the agent to make a lease of real estate for a
ten-year term: Califf v. Bank, 37 Pa. Superior Ct. 412;
Gross v. Kincaid, 83 Pa. Superior Ct. 514.

The lease executed by the agent, without written au-
thority, was in contravention of the statute of frauds.

The lease is not validated by the acceptance of rent
by the principal: Llewellyn v. Coal Co., 242 Pa. 521;
McDowell v. Simpson, 3 Watts 129.

The agent, who later became owner of the real estate
by inheritance, is not bound by the lease for its ten-year
term, by reason of her original act in making the lease:
Miranville v. Silverthorn, 48 Pa. 147; Innis v. Tem-
pleton, 95 Pa. 262; Glidden v. Struple, 52 Pa. 400;
Schwoerdfeger v. Kelly, 223 Pa. 631; Hill v. Epley, 31

Pa. 331; Tustin v. Coal & Iron Co., 250 Pa. 425; Bittner v. Coal Co., 271 Pa. 579; McReavy v. Eshelman, 4 Wash. 757.

The agent, who later became owner, is, not bound by the lease by reason of acceptance of rent: Llewellyn v. Sunnyside Co., 242 Pa. 517.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 10, 1927:

Equity jurisdiction being invoked by plaintiffs and not questioned by defendant, this case proceeded to trial on bill, answer and proofs. It was adjudged that a certain letter of attorney, hereinafter enlarged upon, did not confer on the agent thereby appointed authority to make a ten-year lease of real estate, which lease also will be more fully described as we proceed. It was further adjudged that, in the absence of such authority, the lease contravened the statute of frauds and, by virtue thereof, had the effect of creating a tenancy at will only, which had ripened into a tenancy from year to year; that neither acceptance of rent by the owners of the real estate nor acquisition of title thereto by the agent named in the letter of attorney,—which in fact occurred, —operated to validate the lease for the term named therein; accordingly, the court decreed it to have terminated on April 1, 1925, the date of the expiration of the last yearly period and the day named in a notice to quit which had been duly served on the tenant. Exceptions to the adjudication were dismissed and a final decree entered; defendant has appealed.

The essential facts may be stated briefly as follows: In 1910 and thereafter, Adeline Durr was the owner of the premises now in controversy, 313 Lackawanna Avenue, Scranton, Pa. On June 5, 1913, she executed a writing appointing her daughter, Emma Miller, attorney, for the express purpose and with the express power, in substance, to collect moneys due to her, the donor, and to pay debts owing by her. In May, 1918, Emma

Miller, as "attorney" for her mother, executed a lease to Paul Kaldes, the defendant, covering the property here involved, for the term of ten years, from April 1, 1919, at a rental of $550 a month. Immediately prior to the execution of this lease, Kaldes and a partner were tenants of the property under an earlier lease, not involved in this case. Commencing April 22, 1919, Kaldes paid the monthly rent of $550 by checks drawn to the order of Adeline Durr, which were endorsed, "Adeline Durr, Emma Miller, Attorney," and collected by deposit in the bank account of Mrs. Durr; but there was nothing to show that the latter knew of these particular deposits. In December, 1923, Mrs. Durr died, leaving a will by which she devised the residue of her estate, including 313 Lackawanna Avenue, to her daughter, the agent named in the letter of attorney; thereafter the same rent was paid to the latter. In July, 1923, the daughter died intestate, and title to this real estate passed to her heirs, the plaintiffs. From that time on the rent named in the lease was paid by checks to the "Estate of Mrs. Emma Miller," and deposited for collection by the administrator of that estate. In March, 1924, the heirs-at-law of Mrs. Miller served a three-months' notice to quit on Kaldes and, on his refusal to go, filed the present bill to establish the invalidity of the term named in the lease under which defendant claimed to hold the property.

The substance, not the form or extent, of the final decree is the matter of complaint, it being contended by appellant (1) generally, that, on the facts of the case, plaintiffs were entitled to no relief whatever, and, specifically, (2) that since the letter of attorney contained a clause empowering the agent named therein to do all and every act which might be needful and necessary about the conduct and management of the principal's affairs and estate, it had the effect in law of authorizing such agent to accept the surrender of a then existing lease and to execute the ten-year lease here involved; (3)

that the statute of frauds did not void or affect such new lease or the term named therein; (4) that the agent, after becoming the owner of the demised premises at the death of her mother, must be conclusively presumed to have originally possessed authority to execute the lease now in question, even if such power be found wanting in the written letter of attorney; (5) that the principal, and her successors in title, including Emma Miller, were estopped by acceptance of rent thereunder from denying the validity of the term created by the new lease; and (6) that Mrs. Miller was also estopped by "her implied representation of authority by signing such lease." Since the above are the only points comprehended by appellant's statement of questions involved, they are all that need be discussed on this appeal. We shall pass on each of them in the course of this opinion, though not strictly in the order stated.

The letter of attorney given to Emma Miller confers no express power to lease or sell real estate; nor does it in fact contain any reference whatever to real estate except authority to pay taxes, etc., thereon. It deals with the personal estate of the principal, conferring certain definite powers to collect moneys owing to her and to pay and discharge her debts. The powers granted are specific, not general; though, after the narration of particular powers, for the management of the principal's personal estate, and without any break in the continuity of the instrument, there appear general words authorizing every act "needful and necessary to be done about the premises and in the conduct and management of my affairs and estate." This latter language cannot be given the effect of superimposing, on the limited authority theretofore granted the agent, another authority which would be as broad as the power of the principal herself; on the contrary, it is obvious that the general words we have quoted were intended to confer on the agent only the right to pursue any course her judgment might deem necessary or advantageous in discharging

the specific powers named in the letter of attorney.  It is a well-known rule that, where particular acts are authorized by a power of attorney and general language is also used in the same instrument, the latter is to be limited in its application to the special objects of the power, and this rule applies here.  For examples of the proper application of the rule, see Califf v. Bank, 37 Pa. Superior Ct. 412, and Gross v. Kincaid, 83 Pa. Superior Ct. 514.  On the principle involved, see 2 Corpus Juris 558, 559; and on the general rule that letters of attorney are to be strictly interpreted by the courts, and special powers are not to be enlarged unless clearly so intended, see Campbell v. Foster Home Assn., 163 Pa. 609, 632.

The case of Duncan v. Hartman, 143 Pa. 595, relied on by appellant, is distinguishable from the one now before us.  There the letter of attorney conferred broad authority on the agent to "diligently manage" certain real property of the principals.  We ruled that this "general" but "vague" grant of power would authorize leases to be made by the agent "in the ordinary form and for ordinary terms," but that it did not necessarily include the right to create a long-term lease,—there 15 years; though it was held competent for the defendant to show that this was "a customary way of dealing with land of that kind in that neighborhood," and that the parties themselves had construed the grant as including the right to make such a lease.  The case concerned a letter of attorney drawn to give general power, not one containing specific powers followed by general language.  Moreover, no contention seems to have been made, as in the present case, that the statute of frauds precluded parol evidence to amplify the terms of the authority contained in the writing.  The letter of attorney now before us is not vague, or in any sense ambiguous; it was not drawn to give general power, but certain specific powers, and parol evidence was inadmissible for the purpose of enlarging its plain meaning; but even were we to consider all the parol evidence in the case, it could not be

found therefrom that this writing conferred authority to lease real estate any more than it could be found that it conferred authority to sell or mortgage such property. We agree with the court below that "the manifest intention of the entire instrument was to vest in Emma Miller authority to receive moneys and to pay taxes and other debts of Adeline Durr, the general words...... set forth in the concluding part of the document [being] limited to transactions growing out of the special objects to which the instrument refers"; and since the statute of frauds is relied on in the present case, we again agree with the court below that the receipt of rents by Mrs. Durr and her successor in title cannot be allowed the weight which in Duncan v. Hartman, we suggested might properly be given to that sort of evidence.

The Act of March 21, 1772 (Statute of Frauds), 1 Sm. L. 389, section 1, provides that, "All leases of......any ......lands......made or created......by parol, and not put in writing and signed by the parties so making or creating the same, or their agents thereunto lawfully authorized by writing, shall have the force and effect of leases......at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force or effect." The lease here involved was made in the name of Adeline Durr, as lessor, but it was signed only by "Emma Miller Attorney." As we have already held, Emma Miller had no written authority broad enough to authorize the execution of this ten-year lease. In fact, appellant's answer specifically states that "said Adeline Durr did verbally authorize and instruct the said Emma Miller, her agent in fact, to execute and deliver to me [appellant] a written lease for said premises." Under the circumstances it must be held that the lease, so far as the term of ten years named therein is involved, contravenes the statute of frauds.

As to defendant's contention that the lease had been ratified, and plaintiffs were estopped by the acts of their predecessors in title from questioning the term named,

we said, concerning a somewhat like contention, in Llewellyn v. Sunnyside Coal Co., 242 Pa. 517, 521-2, "It would be vain for the statute to declare that the agent should originally be constituted in writing, if courts of law should hold that a subsequent parol recognition of the acts of the agent, not constituted originally in writing, would satisfy the law." In the Sunnyside Case we also said: "It is well settled that where a previous authority in writing is required in law, a subsequent recognition can be effective only as it is evidenced in the same way"; and the rule is stated in R. C. L., vol. 25, p. 565, section 161, as follows, "Where the statute requires written authority to enable an agent of lessor to make a lease for longer than the stated period, if an agent without written authority makes such a lease, an oral ratification or confirmation thereof by the lessor can give to the lease no greater force or effect than it would have had if the lessor had himself originally made it by an oral agreement"; then these words, which we shall later apply, appear, "and consequently the receipt of rent by the lessor, in accordance with the terms of the lease, cannot give force and effect to the lease by way of ratification." In McDowell v. Simpson, 3 Watts 129, 136, 137, a lease for seven years was made by an agent without written authority and it was contended that the acceptance of rent by the principal was a confirmation of the lease. We said: "It is not pretended that [the principal confirmed the lease] by writing, and although he may have done it by parol [through receipt of rents under the lease,] yet it is obvious that such confirmation could give to the lease no greater force or effect than if he had made it himself originally by parol without writing; [and this], according to the express terms of the act, would have given it the force and effect of a lease at will," which, after payment of rent thereunder for a year, could "be construed" as "a lease from year to year [to be] put an end to by either party at the end of any year [after] giving three

months' notice of his intention to do so." Such notice was given in this case, on the theory that defendant was in the position of a tenant from year to year, and the court below very properly so adjudged the facts.

Thus it may be seen that, even if we read the evidence relied on by appellant, concerning the payment and acceptance of rent according to the terms of the lease made by the unauthorized agent, as showing that the principal and those who succeeded her in title knew that rent was being paid under a lease for ten years, this would not be sufficient to prove ratification, and so legalize the term beyond three years, by taking the lease out of the statute of frauds; no more could it work the same result by way of estoppel.

Another question which calls for discussion concerns the effect in law, on the status of the lease or on the term named therein, of the acquiring and holding title to the demised premises by the agent who originally signed that instrument as attorney. Did this, by way of estoppel or on any other theory, take the lease out of the statute?

On the question just stated, we agree with the court below that "The mere fact that Emma A. Miller, the agent in 1918, later became the owner of the property does not affect the [validity of the ten-year term named in the lease of that year]." The court further well says, "She, in May, 1918, held herself out as the agent of Adeline Durr, and as such purported agent she executed a lease for the term of ten years. She had no 'authority in writing' to make such a lease for ten years, and therefore her lease, as a lease for more than three years, was ineffective as being in contravention of the statute of frauds. No subsequent act of herself alone could make effective as a lease for more than three years the one which she assumed to make in 1918......but which she in fact had no 'authority in writing' to execute...... The fact that neither party to the ineffective lease took any steps to have it declared so does not cure its ineffec-

tiveness; many ineffective contracts are not formally adjudged so, simply because no occasion has arisen for having them adjudged at all."

We further agree with the learned court below that "The doctrine cited by defendant, designated as 'feeding the fee,' which is invoked where a party purporting to be the owner of property makes a conveyance and, having had no [previous] ownership, subsequently acquires it, is then estopped from denying his ownership, does not help in solving the question now before us. As an analogy it is defective. When A by......deed conveys to B a property which A does not own, B is defrauded, and, if A subsequently acquires the property which was the subject of the......deed, it comports with the principles of natural justice that A should be estopped from denying......ownership......at the time the deed was executed. The putting into effect of this principle of justice is not in conflict or out of harmony with any principle of public policy as declared by statute. If in the case at bar the plaintiffs had, by a lease drawn in conformity with the statute of frauds, leased a property which they did not then own, and......had subsequently acquired ownership of said property and then had endeavored to repudiate the lease, defendant would be in position to invoke the doctrine of estoppel. In such a case the only rights involved would be private rights, [and] the Commonwealth would not be interested (except as it is always interested in establishing justice), as there would be no statutory expression of public policy which would be violated by defendant's estopping plaintiffs from denying their ownership of the property constituting the subject of the lease." Here, however, the lease contravenes the statute of frauds.

In Miranville v. Silverthorn, 48 Pa. 147, 150, we held that one who possesses the legal title to land cannot be estopped from asserting such title where the contract to which the alleged estoppel applies contravenes the statute of frauds. As there stated, that "statute is not to

be repealed by an equitable estoppel," since, if "it may be [ruled] that the owner of the legal title has estopped himself from asserting the statute by what he has said and done,......that [would] blot the statute out of existence." Then appear these quaint but pregnant words: "Be it that it is contrary to equity and good conscience to assert the statute, still it is a statute, and is repealable only by the power that made it." We conclude that the authority of Emma Miller as agent, not being evidenced as required by law, the estoppel here set up will not avail to override or, in effect, to repeal the statute of frauds, which designates the only mode in which an agent may be authorized to sell or lease real estate,—by an instrument in writing. It may be suggested at this point that appellant's statement of questions involved suggests no improvements, and the evidence shows none, made by defendant to the real estate which would take the case out of the operation of the statute of frauds.

So far as we are concerned with the implied representation of authority made by Emma Miller in signing the lease, that she was the authorized agent for that purpose of Mrs. Durr, there are not any facts in the case which would estop either Mrs. Miller or those claiming under her from showing that, in law, she possessed no such authority. It appears that the letter of attorney from Mrs. Durr to Mrs. Miller was recorded and that the facts as to the quantum of power which it vested in the latter must have been known to appellant. The primary ground of the doctrine of estoppel is that it would be a fraud to assert to the prejudice of another a state of facts to the contrary of that which he whom it is sought to estop had previously represented, and on the faith of which the other had acted; the doctrine assumes a lack of knowledge by the party claiming the estoppel. In Hill v. Epley, 31 Pa. 331, 334, we said, "If, therefore, the truth be known to both parties or if they have equal means of knowledge, there can be no estoppel." See also Tustin v. Phila. etc. Co., 250 Pa. 425, 436, and Bitt-

ner v. Quemahoning Coal Co., 271 Pa. 579, 582. Here, the only matter which perhaps was unknown to appellant is a matter of law, namely, that the power of attorney was not sufficiently broad to authorize Emma Miller to execute a lease for ten years; yet we must assume the law to have been known to all, and a mistake of that kind will not help either side.

Where all parties concerned either know or have full opportunity to know the facts but misconceive the law which applies to such facts, and an agent's authority is the point concerned, neither the agent nor the principal are bound by an unauthorized exercise of such authority: see 1 Mechem on Agency, 2d ed., 1005, citing McReavy v. Eshelman, 4 Wash. 757, 31 Pac. Rep. 35, to the effect that, "Where the other party knows that the agent purports to act only by virtue of an oral authority, he cannot hold the agent liable for the failure of a contract for which the law,—as both are presumed to know,—requires a written authority," also citing other cases, among them Beatie v. Lord Ebury, 7 L. R. Ch. App. 777, 802, where MELLISH, L. J., clearly says that one, purporting to act as an agent, "cannot be made liable for making a misrepresentation unless it is a misrepresentation in point of fact and not merely in point of law." When we apply this principle to the present case, it is plain to be seen that, since Emma Miller did nothing to deceive appellant, neither she nor those claiming under her are estopped from setting up the statute of frauds, and there is no ground in the case for holding Emma Miller personally responsible for the performance of a lease which she expressly made as agent only. It often happens that those who, under the circumstances present in a particular case, seem not to be equitably entitled, are nevertheless allowed the support of the statute of frauds; since to hold otherwise would avoid the statute, which must be followed as a declaration of public policy: Miranville v. Silverthorn, supra. See, as a very recent illustration, Davis v. Hillman, 288 Pa. 16.

In conclusion, we agree with the court below that "the interest which defendant is attempting to assert as a bar against the plaintiffs' action is an interest founded on an illegal contract, illegal because proscribed by the statute of frauds, and therefore that this interest has never ripened into a right and cannot ripen into a right by ratification based on subsequent conduct or by estoppel based on prior or subsequent conduct; for the courts to permit it to do so would be tantamount to......setting aside the Act of March 21, 1772."

The decree is affirmed at cost of appellant.