Martz, Appellant, v. Bower.

Argued March 5, 1928.

Before Henderson, Keller, Linn, Gawthrop and Cunningham, JJ.

*R. S. Hemingway,* and with him *W. E. Elmes,* for appellant, cited: Coxe v. England, 65 Pa. 212; Union Trust Co. v. Means, 201 Pa. 374; Mott v. Kaldes, 288 Pa. 264.

*E. J. Mullen* and with him *H. R. Stees,* for appellee, cited: Stewart v. Climax Road Mach. Co., 200 Pa. 611; Singer Manufacturing Co. v. Christian, 211 Pa. 534; Rice v. Fidelity and Casualty Co., I Lack. Legal News, 111.

Opinion by Cunningham, J., July 12, 1928:

The result of the trial of an action of equitable ejectment before the President Judge of the Seventeenth Judicial District, specially presiding, was favorable to Oscar M. Bower, the defendant. Plaintiff's motions for a new trial and for judgment n. o. v. were overruled and a final judgment entered for defendant upon the payment by him into court of the sum of $200, being the balance of a total consideration of $1,750, for the alleged purchase by him of the twenty-eight acres of land in controversy. Plaintiff now appeals

and, although there are fourteen assignments of error, the substantial question involved is raised by the sixth, in which it is charged that the learned trial judge erred in refusing plaintiff's sixth point requesting binding instructions in his favor. There are numerous conflicts in the evidence and in considering whether binding instructions for the plaintiff should have been given we must resolve all conflicts in the oral evidence in favor of the defendant and give him the benefit of every inference fairly deducible therefrom: Hunter v. Pope, 289 Pa. 560, 562; Hardy v. Millers Mutual Fire Insurance Association, 293 Pa. 9, 12, and cases there cited.

The issue may be outlined by epitomizing certain facts which are not seriously controverted. For some years prior to November 23, 1922, the plaintiff, Martz, was the owner of a farm in Briarcreek Township, Columbia County, containing approximately sixty-five acres and then in the possession of George Ruckle, under a lease expiring April 1, 1923. On November 23, 1922, Martz and his wife and one, Ostrander, executed a certain writing relative to this farm. The material portions of the first paragraph read: "Isaiah L. B. Martz and wife sell to Geo. B. Ostrander ...... their farm [describing it] for twenty-nine hundred dollars. Possession to be given April 1, 1923." One hundred dollars was paid upon the execution of the paper and it was provided therein that the balance should be paid in cash on April 1, 1923. On the same day Ostrander, who was engaged in the real estate business, entered into a written agreement with the defendant, Bower, by which he agreed to convey to him approximately twenty acres out of the farm in question for the sum of $1,500—$1,300 to be paid down and $200 on April 1, 1923, when the deed was to be delivered and possession given. The $1,300 was paid by Bower to Ostrander. Later, on February 17, 1923, Ostrander also entered into a written agreement to

convey to Bower an additional eight acres out of the Martz farm for $250 paid that day in cash, deed and possession also to be delivered April 1, 1923.

Ostrander employed a surveyor to make the surveys necessary for the drafting of the deeds and the three transactions were to be closed on April 2, 1923, at the office of W. E. Elmes, Esq., attorney for Martz. At that time Ostrander requested, and was granted, an extension of time until April 7th for the closing of the transfers. Upon the representation by Bower (who was ready to pay Ostrander the balance of $200 then due) that he had agreed to remove at once from the house in which he was then living, in order to accommodate an incoming tenant, Martz agreed that Bower should be permitted to move into the house located upon the twenty-eight acres covered by Bower's contracts with Ostrander; Bower obtained the key from the former tenant and moved into the house. There is a conflict in the evidence with respect to the understanding under which Bower took possession of the property—Martz claiming that he notified Bower that permission to move on the premises would not give him legal possession thereof until he had obtained a conveyance from Ostrander of the twenty-eight acres, and Bower claiming that he had really bought this acreage from Martz through Ostrander acting as agent for Martz and that Martz intended to give him possession as his vendee. Between April 2nd and 7th Ostrander absconded with the $1,550 paid to him by Bower under the above agreements. No part of the $2,800 due Martz was ever paid to him and none of the contemplated deeds was executed. Subsequently Bower tendered the balance of $200 to Martz' attorney, who refused the tender. Martz demanded possession of the twenty-eight acres from Bower. Upon his refusal to comply with the demand this action was brought on October 19, 1923, for the recovery of the land in Bower's possession. Mesne profits were also claimed

for a period of twenty-two months from April, 1923, to February, 1925, the case having gone to trial on February 9, 1925, and the evidence indicating that the rental value was from $10 to $20 per month. Defendant's contention, in brief, was that Ostrander was the agent of the plaintiff to sell for him the entire tract, either as a whole or as divided to suit purchasers; that Ostrander had authority to collect the purchase money; and that he had paid the same to plaintiff's agent and had taken possession and made certain improvements on the twenty-eight acres with plaintiff's knowledge and approval. Plaintiff's contention was that Ostrander was not his agent; that he had contracted to sell the farm to Ostrander as an individual purchaser, but had never authorized him to act as his agent in any capacity; and that the defendant had dealt with Ostrander merely as an individual acting solely for himself and not as plaintiff's agent. The learned trial judge, recognizing that the question of agency was the pivotal question in the case, regarded it as one of fact alone and conceived it to be his duty to refuse plaintiff's request for binding instructions and to submit the question of agency to the jury. It therefore becomes necessary for us to consider whether there was any competent evidence which, if believed by the jury, would justify a finding that Ostrander was plaintiff's agent to sell the land now in dispute and to collect the purchase money therefor.

The burden of proving that Ostrander was the agent of Martz rested upon the defendant. The evidence which he presented to meet this burden may fairly be summarized as follows: In August, 1922, Martz orally informed his tenant, Ruckle, that he had placed his farm in the hands of Ostrander for sale. Some time after that he made a similar statement to defendant. On November 23, 1922, in the course of his negotiations with Ostrander, the defendant said he would not

pay any money unless Ostrander had written authority from Martz to sell and collect and that Ostrander then produced a paper and showed him Martz' signature at the bottom. Ostrander then purported to read from the paper an authority to sell the land for Martz and to collect the purchase money, and on the strength of this the defendant signed the contracts with Ostrander and made the payments described above. In December, 1922, the defendant went on the land to make certain improvements; Martz knew this and acquiesced in it. When the survey was made Martz expressed particular interest in having the lines run around the tract covered by the contracts between the defendant and Ostrander, and congratulated the defendant upon his purchase. At that time the plaintiff again said that he had put his farm in Ostrander's hands for sale. Finally, Martz permitted Bower to take possession of the land he had purchased and agreed that the formal transfer of title could be made later. It is contended that this was a recognition of Ostrander's agency and a ratification of the sales.

At the threshold of the defendant's case he was confronted with the statute of frauds (Act of March 21, 1772, 1 Sm. Laws 389) which requires that the authority of an agent to sell real estate, or lease it for more than three years, must be in writing in order to bind his principal: Mott v. Kaldes, 288 Pa. 264; see also McGowan v. Lustig-Burgerhoff Co., 93 Pa. Superior Ct. 227. The applicable provisions of the statute read: "All ...... estates, in ...... lands, ...... made or created by livery and seisin only, or by parol, and not put in writing and signed by the parties so making or creating the same, or their agents, thereunto lawfully authorized by writing, shall have the force and effect of ...... estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force or effect, any consideration for making any such parol ......

estates, or any former law or usage, to the contrary notwithstanding.'' There is absolutely nothing in the above quoted paper, executed by plaintiff on November 23, 1922, which could possibly be construed as authorizing Ostrander to do anything as plaintiff's agent. Its entire purport and effect is to make Ostrander an equitable vendee, in his own right and to the extent of $100, of plaintiff's farm.

Defendant endeavored to avoid the effect of the application of the statute of frauds by the testimony to which we have already referred, and particularly by his testimony relative to the contents of the paper which he said Ostrander produced in response to his demand for written proof of Ostrander's authority to act as plaintiff's agent. Defendant testified, under objection, that Ostrander showed and read to him a document executed by plaintiff and his wife purporting to authorize Ostrander to sell the farm and collect the purchase money; that he did not read the paper himself as he did not have his glasses with him, but was able to identify plaintiff's signature; that he could not "repeat it all over and word it as it was" and that Ostrander took the paper away with him. As this is the pinch of the case we quote defendant's version of the occurrence from his testimony: "Q. What was that writing that he showed you? A. Well, he had a contract in a yellow wallet that he pulled out of his overcoat. I asked him; I said 'I can't pay you any money until you show me a written contract that you have the power to sell and collect.' And he said 'I can do that readily'; and then he pulled it out, and he said 'right here she is.' And he said 'furthermore, there is Mr. Martz' and Mrs. Martz' signatures to it to authorize me to sell and collect for them.' Q. Now, Mr. Bower, did you see that contract yourself? A. I seen the writing; both handwritings, yes sir. Q. You saw the entire writing; did you see the paper? A. Oh yes, yes sir, sure. Q. You saw

the paper? A. Yes, sir. Q. Did you look it over; did you look the paper over? A. No, I didn't, only to show their handwriting, that is. Q. Whether or not you looked it over far enough to see that it was given to Ostrander? A. Oh sure. Q. In other words, you mean to say that you don't remember all that was in the writing? A. Oh no, no, no. Q. You knew the handwriting of Martz; you had seen him write? A. Yes, sir, I knew his handwriting but not Mrs. I aint acquainted with her handwriting. ......, Q. Where is this writing that Ostrander had? A. He has it himself. Q. Is it possible for you to produce a copy of it? A. No sir; can't do it. ...... Q. Now then, whether or not he did read the contract through? A. Well, really, I know, from the time it took him to read it, that he certainly read the whole thing, but if I went to word it over, I couldn't do that. Q. You heard him read this contract? A. Oh, indeed I did. ....... Q. From your recollection, what was that contract that he read over to you? A. Why he started something like this: that this authorized him— Q. Authorized whom? A. Ostrander. Q. Go ahead. A. That this contract authorizes me to sell and collect said I. L. B. Martz farm, either by whole or in different plots, as he had it mapped out; that he should sell it to the best advantage. Q. Do you remember whether or not a price was mentioned? A. No sir, there was no price mentioned that he read off to me. I never knew how much Martz had told him to sell for. Q. Have you given the substance of this agreement, as you recollect it? A. Yes sir." Assuming, as we should in favor of the defendant, that Ostrander produced to him a document executed by plaintiff and that secondary evidence of its contents was admissible upon the ground that its production in court was not feasible because it was retained in the possession of a third party who was out of the jurisdiction, still defendant's testimony on this vital

point did not measure up to the requirements of the established rules of evidence and should not have been submitted to the jury.

A person who proposes to testify to the contents of a document must have read it or a proven copy thereof; otherwise, his testimony is only hearsay. "He may not describe its contents merely on the credit of what another has told him it contains, even though his informant purports to have read it aloud in his presence": Wigmore on Evidence, Sec. 1278. There is therefore no legally competent evidence on this record that the plaintiff ever gave Ostrander authority in writing to sell and collect the purchase money of the real estate in controversy. We must also hold that there is no legally competent evidence in the case to show that Martz ratified and adopted the contracts between the defendant and Ostrander. Since the statute of frauds requires that an agent, in order to bind his principal, must have written authority to sell real estate, ratification of the unauthorized acts of an alleged agent must also be in writing (McClintock v. South Penn Oil Co., 146 Pa. 144; Mott v. Kaldes, supra) and of such a writing there is absolutely no evidence. As defendant failed to show any legal authority in Ostrander to sell, he, of course, failed to show any authority in him to accept any part of the purchase money in behalf of plaintiff.

We think the testimony relating to the taking of possession by the defendant with the consent of the plaintiff and the making of improvements is insufficient to take the case out of the statute of frauds. Granted that defendant took possession, the fact remains that he has proved no contract of sale to him from the plaintiff; nor has he made any payment to the latter or to any legally authorized agent. So far as the improvements are concerned, it is not even alleged that defendant cannot be compensated in damages, although this is vital to his case: Rader v.

Keiper, 285 Pa. 579; Hart v. Carroll, 85 Pa. 508, 510; Jordan et al. v. Jordan,  Pa. Superior Ct.  . The learned trial judge erred in submitting the question of agency to the jury; binding instructions should have been given for plaintiff in so far as his right to recover possession of the land described in the writ is concerned. Neither of the parties to this action has been guilty of any wrongdoing, and it is regrettable that the defendant seems to have been the victim of misplaced confidence in Ostrander. His remedy, however, is against the person to whom he paid his money and he cannot justly retain possession of the plaintiff's land. Under all the circumstances, we shall not award a new trial on the question of mesne profits.

The judgment is reversed and is here entered for plaintiff for the land described in the writ; the record is remitted with instructions to order the return to the defendant of the balance of the purchase money paid into court.