Pettinos, Appellant, *v.* Samuel T. Freeman &
Company.

Argued October 20, 1938.

Before Cunningham, Baldrige, Stadtfeld, Parker and Rhodes, JJ.

*Barnet Lieberman,* for appellant.

*Paul Freeman,* of *Freeman, Fox & Steeble,* for appellee.

Opinion by Stadtfeld, J., December 16, 1938:

This is a suit by George F. Pettinos, Jr., plaintiff, a purchaser of real estate sold at auction by the defendant, Samuel T. Freeman and Company, auctioneers, for and on behalf of W. H. Titgen, Trustee in Bankruptcy, to recover the sum of $800.26, which represents the amount of taxes assessed against the said real estate and which he alleges he was compelled to pay because of representations made by the defendant.

The case was tried by the late Judge Crane, without a jury, on March 14, 1938, who reserved decision, and on March 24, 1938, made a finding in favor of the defendant. Plaintiff filed motions for a new trial and for judgment in his favor notwithstanding the finding. These motions were overruled and judgment entered on the finding in favor of defendant, in an opinion by Glass, J. This appeal followed.

A statement of facts was agreed upon by the parties in substitution for the evidence. The following facts

appear: The appellant-plaintiff bought a certain piece of land at public sale conducted by the appellee-defendant, who was acting as auctioneer for the trustee in bankruptcy of Paxson-Taggart, Inc. The referee authorized the sale subject to all liens and encumbrances of record. A copy of this order was given by the trustee to the appellee without further instructions. The appellee thereupon compiled and issued a printed catalogue containing a description of the various properties and the "Terms of Sale." Paragraph 14 of said "Terms of Sale" provided that the taxes would be apportioned as of date of settlement. In the catalogue appeared, inter alia, the following: "9. In case of failure of title so that the sale is not consummated, or in case of the existence of liens, restrictions or easements which cannot be cleared from the purchase price and subject to which the buyer (not being bound by the terms to accept) is unwilling to take title, the deposit shall be returned and thereupon the Auctioneers and the seller shall be free from all liability." It also set forth that the sale was subject to confirmation by the court. The appellant, relying on the appellee's printed "Terms of Sale," purchased the property for $50 subject to a $15,000 mortgage. The specific order of the referee authorizing the sale was not read out, at or before the sale. The sale was confirmed the next day, but the specific contents of the referee's order were not read out, at or during the confirmation meeting before the referee. Plaintiff, by his agent and attorney, attended the meeting before the referee, at which, without his objection, the sale to him was confirmed. The appellant at no time had actual personal knowledge of the specific contents of the referee's order.

After the trustee delivered the deed to the appellant and it was recorded, he refused to pay the taxes which had accrued before the date of sale. The appellant filed a petition before the referee for a rule to show cause why the trustee should not pay the taxes. The rule was

discharged. The appellant then paid the taxes amounting to $800.26 and brought this suit against the appellee.

Prior to December 12, 1932, plaintiff knew that there were taxes due on the Key Farm and prior to December 1, 1932, the Town of Millville had filed a claim in the bankruptcy proceedings against the bankrupt, setting forth in detail, the taxes which were due and unpaid on the Key Farm. The taxes became a lien on December 1, 1932, in the sum of $800.26.

At the time the property was sold to plaintiff, he signed an agreement in form following: "I hereby agree to purchase the foregoing described Lot 'B', Key Farm, Millville, N. J., of Paxson-Taggart, Inc., Bankrupt, subject to the foregoing terms of sale, subject to the announcements made at the time of sale and subject to the approval of the Court, for the price or sum of Fifty Dollars, subject to a first mortgage of Fifteen Thousand ($15,000) Dollars. George Pettinos, Jr., 1208 Locust Street, Philadelphia, Pa."

Appellant contends that he was misled by the defendant auctioneers because of the representation made that the taxes would be apportioned and that the defendant is liable because it either had no authority to make that representation or exceeded its authority.

The auctioneer's catalogue not only disclosed its principal, but indicated that the sale would require confirmation by the referee in bankruptcy. This was known to both the plaintiff and his agent. They knew that they were bidding on the property of a bankrupt estate, and the bankruptcy laws would be applicable. An examination of the bankruptcy record in the case would have disclosed the provisions of the referee's order for sale. The plaintiff knew, or should have known, that Article 104, Chapter 7, Title 11, of the Bankruptcy Act of 1898, as amended May 27, 1926, U. S. Code Annotated governs this transaction, the said Article reading as follows: "(a) The Court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the

United States, State, county, district or municipality, in order of priority, as set forth in paragraph (b) hereof; Provided, That no order shall be made for the payment of a tax assessed against real estate of a bankrupt in excess of the value of the interest of the bankrupt estate therein as determined by the court."

If said section is read in conjunction with the terms of sale Nos. 9 and 14, we cannot say that there was any misrepresentation on the part of the defendant as to the apportionment of taxes, which would entitle plaintiff to relief.

Taking these provisions together, the plain purport of term 9 is that the title to be given the purchaser must be cleared, if it be possible, from the purchase price, and if this be not possible, then the seller may demand a refund of his deposit. The two terms in question, when read together, mean that there must be an apportionment of the taxes out of the proceeds of the sale, and if taxes cannot be apportioned out of the proceeds of the sale, then the purchaser, under term 9, may refuse to take title and receive back the deposit he has paid. If a purchaser bids for a piece of property at a figure which obviously renders it impossible for the liens to be paid from the price, he cannot say then that since no fund is available out of which taxes may be apportioned, the seller must use other money of the bankrupt estate, if there be any, to clear the taxes. If they cannot be cleared from the purchase price, the purchaser has his option, which is either to refuse to take the property and demand the return of his deposit, or he can do as the purchaser did here, namely, go through with the sale and pay the taxes himself, rather than lose his bargain.

Plaintiff knew or should have known, that having bid only the nominal sum of fifty dollars, there could not possibly be an apportionment of taxes. Even if we assume that there was a misrepresentation, plaintiff could have exercised his rights under term 9 of the sale and refused to consummate it. He could have done that at

the time of the confirmation before the referee the following day. He could have demanded, and would have been entitled to the return of the deposit money of $12.50 which he had paid. He did not, however, choose to do that, but rather, relied on a promise of Collins, the attorney for the trustee, that the bankrupt estate would pay the taxes. Because the sale did not produce sufficient funds, the trustee in bankruptcy was without power to make payment of the taxes. The taxes were not apportioned because of the provision of the statute, and not because the agent or auctioneer exceeded or disregarded its principal's instructions.

In *Mott et al. v. Kaldes,* 288 Pa. 264, 135 A. 764, the Supreme Court, in an opinion by Mr. Chief Justice Moschzisker, said, at p. 276: "Where all parties concerned either know or have full opportunity to know the facts but misconceive the law which applies to such facts, and an agent's authority is the point concerned, neither the agent nor the principal are bound by an unauthorized exercise of such authority: see 1 Mechem on Agency, 2d ed., 1005, citing *McReavy v. Eshelman,* 4 Wash. 757, 31 Pac. Rep. 35, to the effect that, 'Where the other party knows that the agent purports to act only by virtue of an oral authority, he cannot hold the agent liable for the failure of a contract for which the law,—as both are presumed to know,—requires a written authority,' also citing other cases, among them *Beatie v. Lord Ebury,* 7 L. R. Ch. App. 777, 802, where Mellish, L. J., clearly says that one, purporting to act as an agent, 'cannot be made liable for making a misrepresentation unless it is a misrepresentation in point of fact and not merely in point of law.' "

Appellee contends that it did not misrepresent any facts or exceed its authority, that even if there was a misrepresentation of facts it is not liable because plaintiff knew those facts and was not deceived by the alleged misrepresentation; that even though there had been misrepresentation, it was ratified by the defend-

ant's principal, and defendant was absolved from liability. Furthermore, that the misrepresentation alleged as the basis for defendant's liability was one in point of law and not of fact, and could not, therefore, impose liability.

Quoting from the opinion of the court below: "Whichever view we adopt—whether it be that there was no misrepresentation by the defendant, or that if there was a misrepresentation, it was known to the plaintiff, or whether there was a misrepresentation and it was ratified by the principal, or that the agent is not liable for the misrepresentation in point of law—we must conclude that in any event, there could be no recovery against the defendant."

After a careful examination of the entire record, we believe that the court below arrived at a correct conclusion.

The assignments of error are overruled and judgment is affirmed.