## Dumn *versus* Rothermel.

1. A parol lease of land for a term of more than three years is, under the Statute of Frauds, but a lease at will.

2. A ratification of a parol lease of land for a term of more than three years, to avoid the effect of the Statute of Frauds, must be signified by writing. This ratification cannot be made by the original lessor after he has conveyed his title to another.

3. The force and effect as well as the interpretation and construction of a writing, as to whether it be a lease or not, is for the determination of the court and not for the jury.

4. A parol demise of land for more than three years, in the first instance, creates a tenancy at will only, and this satisfies the Statute of Frauds ; but that tenancy at will, like any other, may be subsequently changed into a tenancy from year to year, by payment and acceptance of the rent annually, or other circumstances indicating that to be the intention of the parties.

5. Where the lease is from year to year, or for any indefinite period, notice is necessary to terminate the demise, and this, under the Act of December 14th, 1863, must be given three months before the expiration of the term.

March 3d, 1886.　Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Berks county :* Of January Term, 1886, No. 170.

This was an appeal by Samuel H. Rothermel from the judgment of an alderman for James F. Dumn for land damages and costs in a proceeding before said alderman, under the provisions of the Act of April 14th, 1863, to recover land demised, at the expiration of the term of the demise.

The facts of the case sufficiently appear from the charge of the court, HAGENMAN, J.

During the trial the defendant offered the following evidence :

Q. (To Samuel H. Rothermel) : Tell us what took place between you and Mr. and Mrs. Stichter by which you came to get possession of this property, and built your wharf upon it,— give us dates and circumstances.

Mr. *Bland :* Objected to by the plaintiff, if the offer is to show a lease with Mrs. Stichter, or from her for over three years, because in that case the lease must be in writing and produced.

THE COURT : We will admit the question under our former ruling.　Exception for plaintiff.

A. Well, I went to Pottsville on December 4th, 1880, went

to Stichter's house, and met Mr. and Mrs. Stichter in the house, and wanted to buy the property which they had in Fleetwood. He asked too much for the property. Then I wanted to lease. Mr. Stichter said he would lease it to me, and was trying to find out what I was going to do with the property. I told him—Mrs. Stichter being present most of the time,—I wanted to lease for 15 years, and he wanted to give me a lease for 5 years, and I to put up a wharf at my expense. I did not agree with him on the 5 year term, because I had to put up a wharf, and there was too much expense for the 5 year lease. So, finally, we agreed to a lease for 10 years, and by the time we had agreed upon this lease, it was very nearly time for the train. It was on Saturday evening, and I did not want to miss it. So I paid him the rent right down—$60—and he wrote a receipt very quick, and I went off for the train. (First assignment of error.)

Mr. *Ermentrout:* The defendant offers in evidence letter dated December 6th, 1880, marked D. T. A. F.

Mr. *Bland:* The plaintiff objects, for the reason that it does not purport to be a lease signed by Maria Stichter, the owner of the property, or by any one in her name, or by her authority. 2. The evidence of the defence entirely fails to establish the paper which is now offered in evidence as the act of Maria Stichter, and it does not appear from anything that has yet been shown that she had any knowledge of it at all.

3. The paper is inadmissible, as not in any sense in compliance with the requisites of the Statute of Frauds and Perjuries on the subject of leases of more than three years. 4. It is irrelevant, immaterial and inadmissible.

THE COURT: If it appears that this paper was read by the parties at the time when they were together in Bernhardt's office, the paper is admitted in evidence, together with everything that was said and done by them. Exception for plaintiff. (Second assignment of error.)

Mr. Ermentrout read the letter in evidence as follows:

POTTSVILLE, December 6th, 1880.

MR. S. H. ROTHERMEL—*Dear Sir:* Before drawing up the agreement, we will agree what shall be put in it. Have thought over it, and think the following will do with your approval. You are to have piece of ground for 10 years, pay yearly taxes, have it surveyed and corners marked off, construct a good, substantial wharf of oak timber, permit no rubbish or offal to be put on it, cannot sublet or rent any portion of the lot not used in loading of sand or ore without my consent, and to pay $60 per year in advance, on the 4th day of December as the rent becomes due. If there is anything else to be put in, write

2 AMERMAN—18

[Dumn *v.* Rothermel.]

me. We talked over and agreed upon all I have written, except where you will not have the power to sublet or rent any portion of the lot not necessary in the loading of sand and ore. You can use the whole lot, but not to sublet any portion without my consent. I put this in to save trouble in case you should die (hope you may not), and another party got possession of lease and use it for any and every purpose. It will do you no harm. You can go ahead and put up your wharf and write me whether all contained herein suits you, as we want nothing but what is honorable. Write me.

    Yours respectfully,        H. P. STICHTER, Agt.
  " Always write to Pottsville."

The court charged the jury as follows:

You are sworn to try the issue between James F. Dumn and Samuel H. Rothermel. The evidence discloses that Mrs. Stichter of Pottsville was the owner of some property at Fleetwood, which she sold to Madeira on the 22d of December, 1881, and was by him sold to James F. Dumn, the plaintiff, on January 13th, 1882, at which time the defendant was in possession. The property consists of a tract of land on which is erected an ore wharf.

Mr. Dumn alleges that after he acquired the title to this property, he made an agreement with Rothermel, the defendant, to lease the property to him for one year at $60 rent, the year to begin with the date of the deed to Madeira—December 22d, 1881—which rent was paid in advance. It is not alleged that this lease was made on the 22d of December, 1881; but it is said that it was made after the 13th of January, when Dumn acquired title. Mr. Dumn says: "Shortly after the time I bought—I cannot exactly state the date; it may have been a week, more or less, afterwards," he entered into this alleged agreement with the defendant to let him have this property, the year beginning on the 22d of December, 1881. On the 21st of September, 1882, he had a notice served on the defendant in which he states that he desires to re-possess his property again. The notice is as follows:

SAMUEL H. ROTHERMEL—*Sir:* Being in possession of a certain wharf and piece of ground with the appurtenances, belonging to me, situated in the borough of Fleetwood, Pa., which was demised to you by me for the term of one year, which term will expire and terminate on the 22d day of December next, I hereby notify you that it is my desire to have again and re-possess the said premises; and I do hereby demand and require you to leave the same. Witness my hand, this twentieth day of September, 1882.

[Dumn v. Rothermel.]

At the expiration of the time fixed for the running of the lease, the defendant continued in possession; and on the 6th of January following, 1883, the plaintiff commenced proceedings under the Act of Assembly, relating to landlords and tenants, for the purpose of recovering the possession of his property.

Where a tenant holds over after the termination of his lease, and when he has been fully notified according to the terms of the Act of Assembly, to wit, three months, the landlord commences his proceedings in law before a justice of the peace, if he wants to obtain possession of the premises. That was done in this case.

Information was laid, and proceedings were started on the 6th of January, 1883; and on the 15th of January, 1883, judgment was rendered in favor of the plaintiff and against the defendant for these premises.

[The defendant claims that he had a lease from the Stichters, beginning in 1880, and running for a period of ten years. He states that he went to Pottsville for the purpose of making a lease with the Stichters, and that he there made a lease with them, with Mrs. Stichter, for the term of ten years at the rate of $60 a year in advance. This was on the 4th of December, 1880, and on that day he paid them $60. Upon returning home, he took possession of the property, and made certain improvements, building a wharf and planting scales upon it, under his alleged lease for ten years.

When Dumn became the owner of these premises in 1882, the defendant was his tenant; and if there was such an agreement made between the defendant, the Stichters, for ten years, the sale of the property by the Stichters to Madeira, and by Madeira to Dumn, did not destroy that lease. If the defendant had such a lease, he had the right to hold the premises for the time specified.

Subsequent to the time when he alleges he made this agreement with the Stichters, the defendant received a letter, which he claims is almost or quite tantamount to a lease, or an acknowledgment that there was a lease entered into between the parties.] (Fourth assignment of error.)

[We will take the first part of that letter, and the jury will say from that what was understood by the parties. The letter is dated Pottsville, December 6th, 1880, and is as follows:

"Mr. S. H. ROTHERMEL—*Dear Sir:* Before drawing up the agreement, we will agree what shall be put in it. Have thought over it, and I think the following will do with your approval."

Whether there was or was not a lease made between Roth-

[Dumn *v.* Rothermel.]

ermel and the Stichters is a matter of fact which you will ascertain. If there was, then the improvements made by Rothermel in pursuance of it, although the lease is not in writing, would be sufficient to carry the lease. And, if the jury found there was a lease for ten years, and there was nothing else in the case, the plaintiff had no right to institute these proceedings, and oust the defendant.] (Third assignment of error.)

It is claimed, however, on the part of the plaintiff that whatever may have been the rights of Rothermel by virtue of this alleged agreement with the Stichters for ten years, after Dumn became the owner of the premises, there was a new contract and a new lease made with the defendant. On this point Mr. Dumn testified as follows:

Q. Did you lease to anybody? A. I did; to Samuel H. Rothermel, the defendant here.

Q. For how long? A. The term of one year, for $60 payable in advance.

Q. For one year from what date? A. It was agreed between us that the year was to run from December 22d, 1881, the date of the deed from the Stichters to Madeira, in the office of William Bernhardt, and end on the 22d of December, 1882.

That he says was the agreement which he entered into with the defendant. After some further inquiry in regard to it, he says, speaking about the meeting at Bernhardt's:

" We finally agreed for one year's rental for $60 in advance, and I gave him a receipt; and we agreed that the lease was to run from the date of the deed of the Stichters to Madeira, and end one year afterwards. I did not know the exact date of the deed from Stichter to Madeira; did not have it with me; and it was agreed between us that 'Squire Bernhardt should put in that date into the receipt after I had looked at it."

That is the plaintiff's testimony in regard to what was agreed between himself and defendant.

The defendant, however, contends that he did not enter into a new lease with the plaintiff; that the rights of the parties were to be maintained as they were before under the Stichter lease; and 'Squire Bernhardt is called to corroborate this statement of Rothermel's. The case before you then is, what, if anything, was agreed between the parties when they met in the office of 'Squire Bernhardt? To sustain his statement in regard to the terms of that new lease, the plaintiff points to the fact that the date of the time when it was to begin to run was left blank in the receipt; and that unless there was such an understanding, there was no occasion for leaving such a blank. Upon this the plaintiff bases his right to recover in this case.

We have been asked by the plaintiff to charge you upon the following point:

[1. The defendant has not shown by any competent evidence that at the time of the proceedings of James F. Dumn for possession of the wharf, he, Samuel H. Rothermel, was in possession under lease from Maria Stichter, under which he might have held over. The proceedings for possession by James F. Dumn, the then owner, were therefore legal and regular; and that the plaintiff is entitled to recover in this case.

If the jury find that there was a lease made at the time when they were at Bernhardt's when that $60 was paid, and when that receipt was written, or an agreement for one year, then the plaintiff, his proceedings being regular (and there is nothing against the regularity of the proceedings), would be entitled to recover.]    (Fifth assignment of error.)

The defendant has also submitted points:

1. The plaintiff, having in his complaint before alderman Brownwell, from whose judgment this appeal has been entered, made affidavit that he had leased the premises in dispute to the defendant on the 22d day of December, 1881, and having further testified before said alderman that the lease was made some time in January, 1882, in the office of 'Squire Bernhardt, at Fleetwood, for one year to date from December 22d, 1881, in pursuance of which judgment was entered in his favor by said alderman and the defendant dispossessed; the plaintiff will not be entitled to recover, unless the jury find under the evidence in this case that Rothermel, the defendant, agreed to lease the premises from Dumn, the plaintiff, as testified to by him.

This point is affirmed. We have already said to you that it is necessary for Dumn to show that there was a lease made in January, 1882, between himself and the defendant.

2. If from all the evidence in the case the jury do not believe that a lease was made before 'Squire Bernhardt, as the plaintiff has testified, then the verdict must be for the defendant.

This point is affirmed.

3. If from all the evidence the jury believe that Dumn agreed to take $60 which Rothermel left with 'Squire Bernhardt, with the agreement that it should not affect the right which each party claimed to the property, and that no agreement was made by Rothermel to lease the same from Dumn, the verdict must be for the defendant.

This point is affirmed, provided the jury find that there was a lease made with the Stichters for the period or term of ten years.]    (Sixth assignment of error.)

4. If the jury should find for the defendant, it will be their

[Dumn *v.* Rothermel.]

duty, under the Act of 1863, to give such damages as under the evidence he shall have sustained by reason of his removal from the premises.

This point is also affirmed.

The question, then, comes back again to where we started—what, if there was any, was the lease between the defendant and the Stichters? Was it a lease for ten years, or was it a lease from year to year? If it was a lease for ten years, the question arises whether that was changed when the parties met at Bernhardt's. If it was changed, it is immaterial what the defendant's lease with the Stichters was. If there was an agreement entered into at Bernhardt's office as testified to by the plaintiff, when he says, " we finally agreed for one year's rental at $60 in advance, and I gave him a receipt, and we agreed that the lease was to run from the date of the deed from the Stichters to Madeira, and end one year afterwards." If the jury find that to have taken place, and that that was the agreement entered into between these parties, these proceedings are regular, and the plaintiff is entitled to recover.

Should you, however, find in favor of the defendant, it will be for you to say what damages should be awarded to him. The defendant has testified what the building of that wharf cost him; and that is an element which is to be taken into consideration by you when you come to assess the damages. You will recollect also that before ever the defendant was dispossessed by the constable, he went there as early as three o'clock at night with two or three persons, and by or before seven o'clock, with some others, and tore down the wharf which he had built upon these premises; that Dumn came there and remonstrated with them, and that after he left, they continued tearing it down; and that Dumn returned with some twenty men afterwards to interfere with their tearing it down; and as fast as they tore it up and loaded it on the wagon, Dumn's men unloaded it and spiked it down again. These are matters which you will take into consideration if you come to consider what damages the defendant suffered.

That is all that is necessary for the court to say to you. You will first inquire what the lease was between Rothermel and the Stichters, and if was for ten years, whether the parties met afterwards and made a different lease; and whether, as Dumn testified, they entered into an agreement that the lease, although made in January, 1882, should begin December 22d, 1881, for one year; and if the jury so find, the plaintiff will be entitled to your verdict.

Verdict for the defendant and judgment thereon, whereupon the plaintiff took this writ, assigning for error the admission and rejection of evidence, the answers to the several points of

[Dumn v. Rothermel.]

the plaintiff and the defendant, and those portions of the charge included within brackets, as above set out.

*H. Willis Bland* (*B. Frank Dettera* with him), for plaintiff in error.—1. The alleged lease for ten years was void by the Statute of Frauds and Perjuries: Act March 21st, 1772, 1 Purd. Dig., 830, pl. 1.

2. In Stover *v.* Cadwallader *et al.*, 2 Penny., 124, the Supreme Court says: "By the provisions of the Statute of Frauds, March 21st, 1772, 1 Sm. L., 389, all parol leases exceeding the term of three years from the making thereof, shall have the force and effect of leases or estates at will only, and shall not either in law or equity be deemed or taken to have any other or greater force or effect, any consideration for making any such parol leases or estates or any former law or usage to the contrary notwithstanding. Where an annual rent is reserved. such leases are now construed to be leases from year to year, In this case there was a parol lease for four years, the consideration a round sum of four hundred dollars payable at the end of the four years. It was clearly only a lease at will:" Jackson and Gross, Land. and Tenant, p. 21, par. 7, p. 55 n.; McDowell *v.* Simpson, 3 Watts, 135; Clayton *v.* Blakey, 2 Smith Leading Cases, 116. In the last case the editor says, p. 123: "By the terms of the statute, a parol lease for a longer term than three years, or a written lease by an agent acting under a parol authority, operates as a lease at will:" Porter *v.* Gordon, 5 Yerger, 100. "But the tenure thus created, may, like other tenancies at will, be expanded by circumstances into a tenancy from year to year, subject to the provisions of the original lease. Thus it was held in McDowell *v.* Simpson, 3 Watts, 135, that where an agent, acting under parol authority, demised land in writing, for seven years, the demise took effect as a mere lease at will, which, on the entrance of the tenant and payment and acceptance of a yearly rent subsequently grew into a lease from year to year, although it could not have any further or greater operation." The law was held the same way in The People *v.* Rickert, 8 Cowen, 227; Drake *v.* Newton, 3 N. J., 111; Ridgley *v.* Stilwell, 28 Mo., 400: Lockwood *v.* Lockwood, 22 Conn., 425; and Morehead *v.* Watkins, 5 B. Monroe, 228.

3. As to the submission of "letter" to the jury. The interpretation as well as the construction of a written instrument is for the court and not for the jury: 1 Green. Evid., § 277 and note 2. In Nellis *v.* Coleman, 2 Out., 470, Justice TRUNKEY says: "The construction of the contract was for the court, and it was error to submit to the jury to determine whether the amounts subscribed was a debt owing to the corporation or a loan to be made."

[Dumn v. Rothermel.]

The construction of a written instrument is exclusively the province of the court: Bryant *et al. v.* Hagerty, 6 Norris, 261; Esser *v.* Linderman, 21 P. F. S., 80; Smith *v.* Thompson, 8 Com. Bench, 44; Beatty *v.* Lycoming Ins., Co., 2 P. F. S.; 457; Heath *v.* Page, 12 Wr., 143; Edleman *v.* Yeakel, 3 Cas., 30; Miller *v.* Fiehthorn, 7 Id., 256; Rapp *v.* Rapp, 6 Barr, 51; Cox *v.* Freedey, 9 Cas., 130.

*Ruhl (Ermentrout* with him), for defendants in error.—The provisions of the Act of General Assembly, March 6th, 1872, § 1, P. L., 22, recite: "It shall not be lawful to commence or to prosecute any proceedings to obtain possession of any lands or tenements, under the provisions of the Act of General Assembly, entitled: 'An Act relative to landlords and tenants,' approved December 14th, 1863, unless such proceeding shall be founded upon a written lease or contract in writing, or on a parol agreement, in and by which the relation of landlord and tenant is established between the parties, and a certain rent is therein reserved."

It was therefore decided in Koontz *v.* Hammond, 12 P. F S., 177, that " when proceedings under the Act of 1863 are in court by an appeal from the justice, the plaintiff must show a tenancy which is the foundation of the jurisdiction."

The jury found by their verdict that the alleged lease upon which plaintiff based his proceedings, had not been made. Plaintiff could therefore not recover.

The question of lease or no lease from Stichter was of no materiality, for if Dumn affirmed or disaffirmed it, there was no tenancy of that kind alleged in his complaint.

If he had affirmed it, he as landlord would have recognized a tenant (Rothermel) as holding over, and would thereby have affirmed the form of his preceding tenancy: Hollis *v.* Burns, 39 Leg. Int., 421.

And the tenant's year would have dated from December 4th, 1881, and ended December 4th, 1882, which would have been fatal to his proceeding for non-compliance with the three months' notice required by the statute.

Mr. Justice CLARK delivered the opinion of the Court, March 22d, 1886.

This is a proceeding under the Act of 14th April, 1863, relative to landlords and tenants. The premises consist of "a tract of land, iron ore wharf and appurtenances," in the Borough of Fleetwood. Rothermel came into possession on 4th December, 1880, as the tenant of Mrs. Maria Stichter, of Pottsville, who, it is conceded, then held the title in fee. On the 22d December, 1881, Mrs. Stichter conveyed the fee to Amos H.

Madeira, who on 13th January, 1882, transferred the same to James F. Dumn, the plaintiff. At the date of Dumn's purchase Rothermel was in possession of the premises, under an alleged lease from Mrs. Stichter, for ten years from the 4th December, 1880, and at the trial defended upon two grounds: first, that the term of his lease, under Maria Stichter, was for ten years, and had not yet expired; and second, that if, by his contract, he was but a tenant at will of Maria Stichter, no such relation subsisted between him and James F. Dumn as authorized these proceedings under the Act of 1863.

By the Act of 21st March, 1772, all leases exceeding the term of three years from the making thereof, must be in writing, signed by the parties or their agents thereunto lawfully authorized by writing; if not so made, they have the force and effect of leases at will only. It is conceded that the negotiations between Rothermel and Mrs. Stichter on the 4th December, 1880, at Pottsville, were not in writing. The letter of 6th December, 1880, cannot in any sense be considered a compliance with the requisites of the statute. It is not signed by Maria Stichter, the owner of the property, but by the husband; nor is it signed by him in her name, or, for anything that appears, by her authority; it does not, in fact, purport to be a lease, or to contain the contract of the parties—it forms part merely of the negotiations between the writer, who was the husband of Mrs. Stichter, and Rothermel, preliminary to an agreement in contemplation. "Before drawing up the agreement," he says, "we will agree what shall be put in it. Have thought over it, and think the following will do, with your approval," etc., etc. "If there is anything else to be put in, write me," etc., etc. If any reply was written by Rothermel, it has not been given in evidence. The letter, it is plain, was part of their preliminary negotiations merely, and, even if duly authorized by Mrs. Stichter, without more, would not indicate the terms of a final agreement.

Nor is it of any avail that Mrs. Stichter afterwards orally approved or ratified the contract contained in the letter. A subsequent ratification is, of course, equivalent to a prior authority, but, to avoid the effect of the statute of frauds, the ratification, like the authority, must be signified by writing. The lease, in the absence of a proper writing, executed by the owner or by some one duly authorized in her behalf, was but a lease at will, strictly so called; the statute itself fixes this express relation between the parties. Moreover, the alleged express ratification by Maria Stichter did not take place until after she had disposed of the property, and, of course, this would be ineffectual to create a term which did not previously exist. Whether or not, the arrangement effected between

[Dumn *v.* Rothermel.]

Maria Stichter and Rothermel was a valid lease for ten years, or merely a lease at will, was of course a question of law for the determination of the court; a lease for ten years could not exist unless in writing, and the force and effect, as well as the interpretation and construction of the writing, was plainly for the court, and not for the jury: Nellis *v.* Coleman, 2 Out., 470. The learned judge, however, would seem to have supposed that the question was one for the determination of the jury. In the general charge, he says: " Whether there was or was not a lease made between Rothermel and the Stichters is a matter of fact which you will ascertain. If there was, then the improvements made by Rothermel, in pursuance of it, although the lease is not in writing, would be sufficient to carry the lease; and if the jury found there was a lease for ten years, and there was nothing else in the case, the plaintiff had no right to institute these proceedings and oust the defendant."

This was clearly erroneous; the jury should have been instructed that there was no writing, no valid lease for ten years. The attention of the jurors should not in this way have been diverted from the real question before them.

But one of the incidents of an estate at will is its convertibility, upon the annual payments and acceptance of the rent, into a tenancy from year to year. A parol demise for more than three years, in the first instance, then, creates a tenancy at will only, and this satisfies the statute; but that tenancy at will, like any other, may be subsequently changed into a tenancy from year to year, by payment and acceptance of the rent annually, or other circumstance indicating that intention of the parties. To deny this is rather to contravene than to respect the Statute of Frauds, since the meaning of that act evidently is, that such a parol lease shall enure in every respect as an ordinary lease at will: Smith's Lead. Cases, 109, 110.

Therefore, in McDowell *v.* Simpson, 3 Watts, 135, it was held that a parol lease made by the owner of land, without writing, or by his agent without written authority, for a term exceeding three years, is of itself but a lease at will; but, if possession has been taken and held under it for more than a year, the tenant paying and the landlord receiving the rents annually as they accrue, according to its terms the lease, although it could not have any further or greater operation, will thereafter be construed as a lease from year to year; and, upon proper notice, may be terminated at the end of any year, but at no other time, excepting by assent of the parties.

By the alleged lease the rent was payable annually on the 4th December, at the rate of $60 per annum, in advance; the possession taken under it was continued for a year and upwards,

and the rent would seem to have been paid and accepted annually according to its terms. If this be so, although within the letter of the statute, and therefore at will only, the lease may be construed, as having been expanded to a lease from year to year. The question is one of intention, and therefore, under proper instructions, one of fact for the jury.

Where the lease is from year to year, or for any indefinite period, notice is necessary to terminate the demise, and the Act of 14th December, 1863, requires that notice shall be given " three months before the expiration of the term :" Rich v. Keyser, 4 P. F. S., 86. It follows therefore, that if the lease is one from year to year, in order to avail himself of the remedy, provided by the Act of 1863, Dumn was bound to comply with the statutory conditions. The notice, it is conceded, was given on the 20th September, 1882. Was this three months before the expiration of the term ? The defendant, Rothermel, claims that his contract was for a lease from the 4th December, 1880. On that day, he says, he went to Pottsville for the purpose of obtaining the lease, and he then and there made an oral agreement with Maria Stichter for a term of ten years, at the rate of $60 per year in advance, and on the same day paid her the first year's rent ; that upon returning home he took possession of the property and made certain improvements, building a wharf and planting scales upon it. Subsequently, on the 6th December, 1880, he received the letter already referred to, but it does not appear that any formal lease or other writing was at any time prepared disclosing the precise terms of the contract. Dumn testifies that in January, 1883, the Stichter contract was virtually abandoned, and that he made a new lease in his own name to Rothermel, for one year from 22d December, 1882, and that Rothermel paid $60, the rent in advance. A receipt, since lost or mislaid, he says, was drawn and delivered to Rothermel, in the following form, " Received Fleetwood, January the 15th or 16th, 1882, of Samuel Rothermel, the sum of sixty dollars for one year's rental for a certain iron wharf owned by the said James F. Dumn, the year to run from December 22d, 1881, to December, 1882." The date 22d December, 1881, from which the year was to run, it would seem, was inserted by Bernhart by arrangement of the parties.

Whether or not a new lease was made, as alleged, was submitted to the jury, and that fact was found for the defendant ; but the existence of the receipt and its contents do not appear to be denied. Rothermel says, and in this he is corroborated by Bernhart, that the receipt was in no way to interfere with the rights of either party, under the alleged lease from Maria Stichter; that is to say, if Rothermel had a valid lease from her for ten years, it was not to be cut down by the receipt,

Assuming that there was no new lease, but an attornment merely under the old, this receipt expressly declares, if we are correctly informed as to its contents, that the ensuing year was " to run from December 22d, 1881," the date of the conveyance by Mrs. Stichter to Amos H. Madeira. If this was so, and whether it was or not was for the jury, then the term expired on the 22d December, 1882, and the notice was certainly given in time. These were facts which, under proper instructions, should have been submitted to the jury. The finding of the jury that there was no new lease directly from Dumn, is in no way inconsistent with a modification of the alleged existing contract as to the time of the beginning and ending of the term, and that the receipt did affect this change does not appear to be disputed.

We conclude therefore, first, that there was no such contract shown between Maria Stichter and Samuel H. Rothermel as under our Statute of Frauds, would operate as a valid lease of the premises in question for ten years, but that by the express terms of that statute, the demise took effect as a lease at will only; second, that such facts and circumstances have been shown as would have justified the jury in finding that this lease at will had been expanded into a lease from year to year, and if it be shown that the notice of 20th September, 1882, was given three months before the expiration of the term, the relation subsisting between the parties was such as would authorize their proceedings under the Act of 1863.

The judgment is therefore reversed and a *venire facias de novo* awarded.