# Willis-Winchester Co., to use, *v.* Clay et al., Appellants.

*Landlord and tenant—Lease—Confession of judgment—Appeal —Waiver of right—Affirmed on merits.*

1. Where a lease contains a warrant of attorney to confess judgment coupled with an express waiver of the right to appeal, and a judgment entered thereon is opened, and after trial judgment is again entered for plaintiff, from which defendant appealed, a motion by plaintiff to quash the appeal will be dismissed, where the appellate court finds no evidence in the record to sustain appellee's contention that the lease was not in existence at the time the judgment by confession was entered.

2. A waiver of the right of appeal has no application to prevent a review of a judgment involving the decision of such a point.

*Landlord and tenant—Lease—Tenants in common—Statute of frauds—Lease over three years—Confession of judgment—Petition to open—Answer—Use-plaintiff—Estoppel.*

3. The statute of frauds requires that leases exceeding three years shall be in writing, and that agents signing such leases shall be lawfully authorized in writing.

4. A letter addressed by several tenants in common of real estate to one of their number fixing his salary "as manager" of the estate, is not sufficient, under the statute of frauds, to authorize the person addressed to execute a lease for three years or more, or cancel an existing lease which had been duly authorized by the owners in writing.

5. In such case, oral evidence is inadmissible for the purpose of enlarging the plain meaning of the letter so as to show that the person addressed had authority to sign a lease for three years on behalf of all the owners of the property.

6. Nor is parol evidence admissible to show that the owners subsequently assented to the lease or had agreed that the lease in question should end and supersede an existing lease which all parties had previously approved in writing.

7. Where an agent, with the written consent of the coöwners of premises, executes a lease thereof, and before its termination executes a second lease for more than three years to the same tenant without any consent except the written approval of one of the owners who had no written consent from his coöwners, such second lease with its approval does not constitute a conveyance by the approving owner of his own interest, so as to constitute the

lessee a tenant in common of the other owners with incidental rights as a tenant in common.

8. The use-plaintiff stands on the right of the legal plaintiff; but one of several legal plaintiffs, cannot alone, by any action of his, estop another legal plaintiff, who held title to property in common with him, from enforcing a common contractual right under a contract.

9. On a rule to open a judgment entered on a confession in a lease dated 1921, an averment, in the petition to open, that defendants complied with all the terms of a later similar lease executed in 1925, and were not in possession under the lease of 1921, is sufficiently met by an answer denying that the lease of 1925 was in effect or that defendants held possession thereunder.

Argued May 9, 1928.   Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

Appeal, No. 176, Jan. T., 1928, by defendants, from judgment of C. P. No. 5, Phila. Co., Dec. T., 1926, No. 20853, on directed verdict for plaintiff, in case of Willis-Winchester Co., agent, to use of Mary A. Mellon et al., trustees, v. William Henry Clay et al.   Affirmed.

Issue on rule to open judgment.   Before Henry, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Judgment on directed verdict for plaintiffs in opinion by Martin, P. J.   Defendants appealed.

*Error assigned,* inter alia, were refusal of judgment for defendants n. o. v., and of a new trial, quoting record.

*Daniel C. Donoghue,* with him *James F. Masterson,* for appellants.—So far as the right of possession of a lessee of one of several tenants in common is concerned, it is immaterial whether the lease made is for the lessor's own undivided fractional interest of the title, or if the lease purports to be for the entire title: Hayden v. Patterson, 51 Pa. 261; Baker v. Lewis, 150 Pa. 251.

Plaintiffs were not entitled to sole possession; notice to quit was therefore defective.

It is clear that defendants would have the right to remain in possession of the real estate under the lease in writing made with Willis-Winchester Co., agent, and approved in writing by Charles K. Mellon, one of the owners of the fee, and as that term commenced January 1, 1926, and did not terminate until December 31, 1928, there was no authority for the other cotenants, joined by Charles K. Mellon, to demand the ouster of defendants from any possession on March 3, 1927, the date of the confessed judgment.

Oral evidence is competent to show termination of written lease by new lease, even though latter is invalid under statute of frauds because approved in writing by only one of the coöwners.

*Stanley Folz,* of *Sundheim, Folz & Sundheim,* for appellee.—One tenant in common cannot, as against his cotenants, lease a common property when said lease would affect the rights of his cotenants: McKinley v. Peters, 111 Pa. 283; Caveny v. Curtis, 257 Pa. 575; McCullough's Petition, 275 Pa. 456; Wally v. Jones, 275 Pa. 250

Inasmuch as the lease purports to be a lease of the entire estate and not merely of a three-sixteenth interest, it is ineffective to pass the interest of even Charles K. Mellon: Brown v. Power, 263 Pa. 287; Affrime v. Mandel, 267 Pa. 387.

Defendants were in possession of the property under the hold-over clause of the lease of June 24, 1921.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, June 30, 1928:

At the trial of this suit, the court below gave binding instructions in favor of plaintiffs; a verdict and judgment were entered accordingly.  Defendants asked for

judgment n. o. v. and for a new trial, both of which were refused; this appeal followed.

Plaintiffs moved to quash the appeal, whereupon an order was made stating that the motion would be finally disposed of when the merits of the case came before us for argument.

The motion to quash is based on the ground that the warrant of attorney to enter judgment has coupled with it an express waiver of the right to appeal; but appellants contend that the agreement of waiver does not control the present situation. Here, the question is not whether judgment by confession was properly entered; it is whether plaintiffs were not entirely without power to enter such a judgment because, at the date of its entry, the lease containing the warrant relied on for that purpose had ceased to exist. Whether or not the lease had come to an end before the time in question was the controlling issue in the court below, and the ruling of that point against appellants, as a matter of law, is the principal thing which they now seek to have reviewed. Under circumstances like those here involved a waiver of the right of appeal has no application to prevent the review of a point such as the one now before us: Curry v. Bacharach Quality Shops, Inc., 271 Pa. 364, 372-3; Peters v. Dalton (No. 1), 27 Pa. Superior Ct. 285, 286.

The facts necessary to have in mind, in order to understand the question before us, may be briefly stated as follows: On June 24, 1921, the Willis-Winchester Co., "Agents," entered into a contract of lease for premises 1702 Market Street, Philadelphia, with the present defendants as lessees. This instrument, approved by an endorsement in writing thereon signed by the five persons who at that time held legal title to the demised premises, provided for a term of four years and six months, commencing July 1, 1921, and for renewal of the term from year to year in the event of a holding-over. It also expressly stipulated that, on the termina-

tion of the original or any hold-over term, if the lessees failed to remove from the premises and deliver up possession, judgment in ejectment, "without any stay of execution or appeal," might be forthwith entered "against the lessees and all persons claiming under them for recovery by the lessor of possession," and that "thereupon, a writ of habere facias possessionem may issue forthwith,......all of which proceedings shall be without the right of the lessee to have an appeal." Subsequently those who held the legal title as trustees, and who had in writing approved the lease, transferred their title to the persons who owned the equitable estate, and by several other conveyances this title finally became invested in Sarah Mayer, the last use plaintiff named in this case. On the occasion of each of these transfers, the persons who held the legal title formally assigned the above mentioned lease to the transferee, so that, from the creation of this lease, it has followed the title in fee, as the only demise of the premises. It appears, however, that on April 21, 1925, the Willis-Winchester Co., "Agents," signed a paper purporting to be a new lease of the property in controversy to the present defendants. This so-called new lease is for a period of three years from January 1, 1926, which marked the end of the original term mentioned in the demise of 1921; it names the same rent and contains the same provisions as the latter, but, instead of being formally approved in writing by all the then owners of the fee, as was the lease of 1921, it contains the following endorsement: "I hereby accept and approve the foregoing agreement of lease made by Willis-Winchester Co., Agent, in pursuance of authority given by [signed] Charles K. Mellon (Seal)." At the date of the 1925 writing, the property in controversy was owned in common by a number of persons, all of whose estates were subject to a one-third life interest of Mary A. Mellon, as widow of Frank P. Mellon, deceased. Of these ten-

ants in common, Charles K. Mellon owned only a three-sixteenth interest, subject as just stated.

On September 29, 1926, Sarah Mayer, through her duly constituted agents, gave defendants a notice to quit at the end of their current hold-over term under the lease of 1921, namely, on December 31, 1926, and upon their failure to vacate the property at that time, on March 3, 1927, a judgment by confession on the warrant of attorney contained in the 1921 lease was entered against defendants. On petition, the confessed judgment was opened and the case tried before a jury. The present appeal is from a judgment for plaintiffs, following a verdict instructed for them at this trial.

The controversy now rests on the question of what effect should be given the lease of 1925, which the court below held invalid under the statute of frauds. Appellants claim (1) that the last-mentioned instrument is a valid lease under the statute, binding all the owners of property, since Charles K. Mellon, who in writing approved it, was the recognized manager of the Mellon estate; (2) that an item of testimony offered, and, as appellants claim, wrongfully rejected, was sufficient to show that Charles K. Mellon's coöwners had orally assented to the lease of 1925, and therefore, even if this kind of approval was not enough to make such lease valid under the statute of frauds, it was enough to show that the old lease of 1921 was tacitly agreed, by all the owners of the property, to be at an end; (3) that, at any rate, the lease of 1925 constituted a valid demise of that undivided part which was possessed by Charles K. Mellon as an owner in common with his brothers and sister, and hence that they, appellants, have the right to retain possession of the property in the place of Charles K. Mellon, as cotenants with the other owners.

As to the first of above claims, it is not contended that the Willis-Winchester Co. had previous written authority to make the lease of 1925, or, for that matter,

the lease of 1921.  As already shown, the earlier contract was formally approved in writing by all of the owners of the legal estate; which approval, of course, supplied the written authority required by the statute of frauds, so far as that lease is concerned.  But the so-called lease of 1925 had no written approval thereon excepting that of Charles K. Mellon, who, as said before, owned but a comparatively small undivided interest in the property.  In order that the later lease should be valid under the statute of frauds, it must have been ratified by authority similar to that of the lease of 1921; for the lease of 1925 was made April 21, 1925, to continue until January 1, 1929, a period of over three years and this places it within the provisions of the statute: Whiting v. Pitts. Co., 88 Pa. 100.  The ratification then must be established by written proof: Dumn v. Rothermel, 112 Pa. 272; McDowell v. Simpson, 3 Watts 129; Harper Bros. v. Jackson, 240 Pa. 312; Mott v. Kaldes, 288 Pa. 269.  For the avowed purpose of showing the "written authority" of Charles K. Mellon to "execute leases on behalf of the estate," defendants depended upon a letter placed in evidence, addressed to Charles K. Mellon and signed by the other owners of the property, which reads as follows: "The undersigned being with you all the persons interested in the Frank P. Mellon Estate hereby agree that your salary as manager of said estate shall be at the rate of six thousand dollars per year from and after October 1, 1924."

Appellants contend (2) they should have been allowed to explain by oral evidence, which they offered, that the above-quoted letter conferred the authority on Charles K. Mellon of general manager of the Mellon Estate, which owned numerous pieces of real property; that he was thus empowered to sign leases on behalf of all the owners of these properties, and therefore when he signed the lease of 1925 for the premises here in controversy, it was "with the consent and approval of the other members of the Mellon Estate."  The testimony in question

was offered under Duncan v. Hartman, 143 Pa. 595, and rejected under Mott v. Kaldes, 288 Pa. 264. An examination of these two authorities will show, first, that even the Duncan Case would hardly sustain the offer now before us; next, under the Mott Case, it is clear that, by reason of the statute of frauds, the oral testimony offered was inadmissible for the purpose of enlarging the plain meaning of the letter here in question. Our statute of frauds, as well known, requires that leases exceeding three years shall be in writing, and also that agents signing such leases shall be "lawfully authorized in writing." As correctly stated by the court below: "There is nothing about [the letter, which figures in this case,] to show an authorization or intention to authorize Charles K. Mellon to lease the property for a period of over three years.......The only purpose of this letter was to fix his salary as manager of the estate." The unambiguous meaning of a letter like the one now before us cannot be extended by parol into an authority under the statute of frauds to execute leases on behalf of the owners of real property, and the court below properly so ruled. This being the case, there was no error in refusing the testimony offered for the purpose of explaining the writing in question.

The testimony or oral evidence discussed in the immediately preceding paragraph is the evidence mentioned in the second contention above; it was not tendered for the broader purpose there suggested, and had this testimony been so tendered, under the circumstances of this case, it would not have warranted the conclusion stated in that contention, as will be shown more fully in the course of our discussion of contention No. 3 (see the beginning of the paragraph next but one to the final order at the foot of this opinion), which other contention we shall now consider.

The third contention,—the one on which appellants chiefly base their motion for judgment n. o. v.,—is that the effect of Charles K. Mellon's signing the lease of

1925 was to transfer to them, at least for the term named in that writing, Mellon's undivided interest in the demised premises, and thus to make them, for the time being, tenants in common with the other owners of the property; therefore they, as owners of an undivided interest in such real estate, have a legal right to hold possession of it, and no coöwner can maintain ejectment against them without showing a refusal on their part to recognize the cotenancy existing between them and the plaintiff in such action. A tenant in common cannot ordinarily make a lease binding on his cotenants (Caveny v. Curtis, 257 Pa. 575, 580; McCullough's Petition, 275 Pa. 456, 458; Wally v. Jones, 275 Pa. 250; Swint v. McCalmont Oil Co., 184 Pa. 202, 206), though he may let out his share of the common property (Hayden v. Patterson, 51 Pa. 261, 265); but this particular lease of 1925, as shown by the petition, in no way purports to be a contract of that character, nor does the claim that defendant leased only a three-sixteenth interest otherwise appear in the pleadings. Furthermore, appellants' position entirely overlooks the fact that this is not an ordinary action of ejectment, founded on rights claimed by one cotenant against another, such as was the situation in some of the authorities upon which they rely; it is a case where appellants, in the year 1921, entered into a contract in writing, whereby they expressly agreed that, if, at the end of the term set in that contract or any renewal thereof, the lessees failed to deliver up possession of the demised premises, judgment could be confessed against them and execution issue to oust them. After due and proper notice to quit at the end of a renewal term, these contractual rights are being enforced against defendants; that, very briefly, is this case.

Of course, as the present suit is brought, the last use plaintiff (the real owner of the property) stands on the rights of the legal plaintiffs named by her (Automobile Securities Corp., for use, etc., v. Wilson, 293 Pa.

143); but, even granting this, and that Charles K. Mellon is one of these legal plaintiffs, he could not, by any action of his, estop the other legal plaintiffs, who held title to the property in common with him, from enforcing their contractual rights under the lease of 1921, which, as we have shown, authorizes them to regain possession of the demised premises, by the methods here pursued, from anyone who might hold that possession at the end of a renewal term. Had Charles K. Mellon himself signed the lease of 1921 as lessee, with himself and all other owners of the property named as lessors, and then, as here, formally transferred his lessor interest down the line of title to the real estate, he could be ousted from possession by confession of judgment entered and execution issued according to the terms of the contract, and so can anyone else who signed such a contract as lessee, though he claims to be a coöwner; that is, if the lease of 1921 was in existence at the time of the confession of judgment and execution thereunder.

The original validity of the lease of 1921 is not questioned, and, with this fact established, there is no evidence in the case sufficient to show its termination. The alleged lease of 1925, signed by Charles K. Mellon alone, of all the owners of the property, could not terminate the prior lease, and, as previously stated, the record neither contains nor suggests any other evidence from which the conclusion could be drawn that, upon the execution of this so-called lease of 1925, there was an intention on the part of the owners generally to bring the lease of 1921 to an end. On the contrary, all of the evidence in the case indicates that the writing of 1925 never had nor was intended to have any such effect. Charles K. Mellon's subsequent assignment, as one of the lessors, of the lease of 1921, when he parted with his title to the real estate, indicates that even he did not consider the writing of 1925 as being effective to overcome the former demise.

We are not impressed by appellants' contention that, had the testimony offered by them, to show that Charles K. Mellon signed the lease of 1925 "with the consent and approval of the other members of the Mellon Estate," not been stricken out, it would have warranted a finding that the lease of 1921 was thereby brought to an end. Appellants argue that such consent to the execution of the 1925 lease would be so inconsistent with an intention on the part of the owners to continue the term created by the former demise, that the conclusion would necessarily follow that they had no such intention. The answer to this is that the testimony in question was not offered to prove, or as tending to prove, an intention on the part of the owners of the real estate to terminate the existing lease, but for another expressed purpose,—to show that all the owners had given to Charles K. Mellon "general authority" as "manager" of the Mellon Estate, which general authority included the power to execute leases. There was no offer to show that Mellon was authorized to cancel leases in general, much less that the other owners of the demised premises had empowered him to cancel the particular lease under which the present judgment was entered. Moreover, the form of approval signed by Mellon on the 1925 lease suggests no purpose to act for others; on the contrary, it indicates that Mellon was acting for himself alone. Finally, we cannot sustain appellants' contention that, since plaintiffs by their answer failed to deny an averment in the third paragraph of the petition to open the judgment, that averment must be taken as true, and, if true, it establishes the fact that defendants did not hold possession of the premises in controversy under the lease of 1921. The averment in question contains a statement that "the defendants have complied with the terms of said lease [of 1925] in every respect"; but these words are only part of a general assertion that defendants "are not in possession of said premises" under the lease of 1921. Plaintiffs' answer plainly denies

that the alleged lease of 1925 "is in effect, and defendants hold possession......thereunder." This, taken in connection with the other averments of the answer, is a plain denial that the acts of defendants, in complying with the terms of the alleged lease of 1925, constituted an occupancy thereunder, and an assertion that their occupancy of the premises was under the lease of 1921, the provisions of which, excepting as to the term of years named therein, are identical.

As before stated, there is no evidence on which a finding can be based that the lease of 1921 had become ineffective at the time of the present judgment, and, in the absence of such a finding, defendants are bound by the provisions of that contract, including those authorizing a confession of judgment for possession. Since we have concluded that the lease of 1921 was effective at the date of the judgment here confessed, and since that is the only point in the case to which the contractual waiver of appeal would not apply, we might dismiss this appeal thereunder; but, having been obliged to consider the merits, on the road to the above-stated conclusion, we shall make the following order:

The motion to quash is dismissed and the judgment is affirmed.