Holland Furnace Company, Appellant, *v.*
Keystone Dehydrating Company.

496

Submitted December 9, 1942.

Before KELLER, P. J., BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Milton B. Riskin,* of *Taylor, Taylor & Riskin,* for appellant.

*Lewis R. Long,* for appellee.

OPINION BY KELLER, P. J., February 26, 1943:

This was an action of assumpsit for the use and occupation of land. The plaintiff averred that with its permission the defendant had, during the spring and summer of 1940, entered upon, and used and occupied for farming purposes, a tract of 24.9 acres owned by plaintiff, on which the defendant had raised and harvested a crop of soy beans; that the reasonable value of said use and occupation was five dollars per acre, but that the defendant had paid nothing.

The defendant admitted the use and occupation of the land, its harvesting of a crop of soy beans, and that it had paid the plaintiff nothing. Its defense was that on or about April 26, 1940 an oral lease for a term of four years from May 1, 1940 had been entered into between the parties, under which defendant had expended $447.30 in clearing the field of weeds, brush and rubbish; that the tract had been leased for the purpose of growing alfalfa, after the crop of soy beans—which was said to be a 'scavenger' crop—had been harvested, and that by the action of the plaintiff in disaffirming the lease, the defendant had lost the profit it would have made on the alfalfa crop for three years, the estimated value of which, $1,693.20, together with the expenses of clearing the land as above, it sought to recover by way of set-off and counterclaim, in the aggregate amount of $2,140.50.

The court submitted to the jury the questions whether an oral lease for four years had been made, and if so, and it was broken by the plaintiff, the amount of 'damages' suffered by the defendant. The court erroneously left to the jury the defendant's claim for loss of profits[1]; but the verdict of the jury was for only $447.30, the amount alleged to have been paid for clearing the land. From the judgment entered on this verdict, plaintiff has appealed.

As the alleged lease was an *oral* one for *four years,* it was controlled by the Statute of Frauds and Perjuries of March 21, 1772, 1 Sm. L. 389, which provides in section 1, *inter alia:* (1) That all leases of land

---

[1] Since *M'Clowry v. Croghan's Admr.,* 31 Pa. 22 and *Hertzog v. Hertzog's Admr.,* 34 Pa. 418, which overruled a long line of cases, it has been held that the breach of an oral contract for the sale of land or an oral lease of lands for a term exceeding three years, will not entitle the other party to damages for the loss of his bargain or his estimated profits. See *McCafferty v. Griswold,* 99 Pa. 270, 276; *Sausser v. Steinmetz,* 88 Pa. 324, 326-327; *Walter v. Transue,* 17 Pa. Superior Ct. 94, 99.

created by parol and not put in writing and signed by the parties making the same, or by *their agents thereunto lawfully authorized by writing,* shall have the force and effect of *leases at will* only; and (2) that no leases,[2] estates or interests in any lands shall be granted, assigned or surrendered unless by deed or note in writing, signed by the party so granting, assigning or surrendering the same, or by *his agents, thereto lawfully authorized by writing.*

But before applying the statute to the facts in the case, a primary and preliminary question arose, namely, was there sufficient competent evidence in the case that a four year oral lease had actually been entered into between the parties, to submit that matter to the jury? By competent, sufficient evidence, in the light of the Statute of Frauds and Perjuries, is meant, competent evidence that a *clear, explicit* and *unambiguous* oral contract of lease for four years had been entered into (*Kirk v. Ford,* 330 Pa. 579, 585-6, 200 A. 26). As stated in *Hart v. Carroll,* 85 Pa. 508, the terms of the oral contract must be shown by "full, complete, satisfactory and indubitable proof."

In our opinion, in the light of these requirements, there was not sufficient competent evidence of the making of the four year oral contract of lease to submit it as a question of fact to the jury. The court should have so ruled, in which event, the defendant's set-off and counterclaim would have fallen and the plaintiff would have been entitled to a verdict for the reasonable value of the defendant's use and occupation of its land: *Walter v. Transue,* 17 Pa. Superior Ct. 94, 101, 102.

We cannot pass by, however, the failure of the trial judge properly to instruct the jury with respect to the force and effect of the Act of 1772, supra, since it may have affected the verdict.

---

[2] This applies only to *leases* for over three years: *McKinney v. Reader,* 7 W. 123.

His reference to the act was as follows: "And there we come into a legal position established by an old act of Assembly passed in the year 1772, as I recall it, which says that all leases over three years must be in writing before you can have specific performance of the same by the one from the other." This was not an adequate reference to the act.

The Statute of 1772, supra, does not limit its effect to denial of the *specific performance* of an oral lease for over three years. It provides that the force and effect of such a lease shall be a *lease at will only.*[3]

The purpose of the statute is to avoid opportunity for fraud and perjury likely to arise from oral conveyances of estates in lands and oral leases of lands involving long terms—that is over three years. It is not a mere rule of evidence. It is a declaration of public policy: *Mott v. Kaldes,* 288 Pa. 264, 276, 135 A. 764.

It does not *declare void or wholly invalidate* oral leases exceeding three years, but it does shorten their terms by giving them only the force and effect of leases at will: *Ferri v. Liberatoscioli,* 338 Pa. 454, 456, 13 A. 2d 45; *Goldstein v. Nichols,* 273 Pa. 107, 110, 116 A. 670; *Whiting v. Pittsburgh Opera House Co.,* 88 Pa. 100, 101 —not the syllabus, which is incorrect.

The statute also provides that, where an agent assumes to act for a lessor, his authority to make a lease for a term longer than three years must be in writing;

---

[3] By judicial construction, the tenancy at will thus created is changed from a lease at will to one from year to year, when possession has been taken and held for more than a year under the lease and the rent has been paid and accepted in accordance with its terms: *Ferri v. Liberatoscioli,* 338 Pa. 454, 456, 13 A. 2d 45; *McDowell v. Simpson,* 3 W. 129, 136; *Stover v. Cadwallader,* 2 Penny. 117; *Dumn v. Rothermel,* 112 Pa. 272, 282, 283, 3 A. 800; *Institute of P. Deaconesses v. Lingenfelser,* 296 Pa. 493, 498, 146 A. 123. But these decisions are not pertinent to this case, for the defendant left the premises before a year was up and paid no rent.

and a ratification of such an oral lease, in order to be valid, must likewise be in writing: *McDowell v. Simpson*, 3 W. 129; *Dumn v. Rothermel*, 112 Pa. 272, 3 A. 800; *McClintock v. Oil Co.*, 146 Pa. 144, 162, 23 A. 211; *Mott v. Kaldes*, 288 Pa. 264, 272, 135 A. 764; *Humphrey v. Brown*, 291 Pa. 53, 59, 139 A. 606; *Willis-Winchester Co. v. Clay*, 293 Pa. 513, 520, 143 A. 227; *Heartzog v. Borgel*, 7 Pa. Superior Ct. 257, 259.

This plaintiff is a corporation. A corporation can act only by its agents. Hence the authority of plaintiff's agent to make any kind of a lease for four years had to be in writing. An oral lease for four years made by an *agent without authority* to make it is *void*, unless the principal accepts the benefits under it, in which event it will be valid as a lease at will. It is void not because it is oral, but because the agent is without legal authority to make it: *Mott v. Kaldes*, supra, p. 276. On the other hand, an oral lease for four years made by an agent duly authorized in writing to make a lease for that term is not *void*, but has the force and effect of a lease at will, which may ripen into a lease from year to year. See note 3.

We come back then to the primary question involved.

The home office of plaintiff company was at Holland, Michigan. Mr. VandenBos was its plant manager at Bethlehem. He had no authority from the company to convey away its real estate or make a contract leasing its land for a term exceeding three years. The home office of the defendant company was at Nazareth, Pennsylvania. Mr. Pharo was its president and general manager.

In reviewing the evidence we shall consider the uncontradicted testimony; and where there is a dispute in the testimony we shall adopt that given by the defendant's witness or witnesses, since the verdict was in its favor.

Mr. Pharo testified that a part, at least, of the defendant's business was the making of four year leases

of land, on which to plant alfalfa—a four-year crop on one planting. He was bound to know that in this state a four year lease, in order to be valid for more than a lease at will, had to be in writing; and further, that an *agent* for an owner of land could not make a valid lease of land for four years unless his authority to do so was in writing. We are satisfied that he knew this. But whether he did or not, it is the law and he was bound by it.

Defendant company had a lease on a large tract of land adjoining or near to plaintiff's unoccupied tract of 24.9 acres. On or about April 26, 1940 Mr. Pharo called to see Mr. VandenBos with a view to leasing plaintiff's tract too. He asked Mr. VandenBos, Who was in charge of the Holland Furnace Company's grounds and buildings at Bethlehem? VandenBos told him he was. Pharo then said that he was the Keystone Dehydrating Company's representative and that they had a number of acres of land under cultivation around the furnace company plant and he was desirous of acquiring its vacant land for cultivation of alfalfa. VandenBos asked him, "What is your proposition?" Pharo replied that they had a standard form of lease [4] which they used. He did not have a copy of the lease with him but he said he told VandenBos, "that we leased land for four years at five dollars per acre per year, that we planted alfalfa, but that in his case we would have to put in soy beans because of the fact that the fields were so badly infested with weeds that *we would have*

---

[4] This standard form of lease was printed, leaving blanks to be filled in to meet the particular transaction. It provided for a lease of the tract of land [of a described acreage] for the term of four years from the first day of ......, 194.., "for the purpose only of planting, cultivating and harvesting of farm crops thereon", at a rental of $5 per acre per year, *payable quarterly in advance; with the right and option in the lessee of renewing the lease for the further period of four years, upon the same terms and conditions,* by giving written notice not less than three

*to use soy beans to kill the weeds first, and then plant
alfalfa the next year.* (Italics added). I told him that
we had a recapture clause in our contract which would
allow them to buy off the contract any time during
the four year period on a certain specified basis, namely
sixteen dollars an acre the first year, twelve dollars the
second, eight the third and four the fourth"; and that,
in that event, the lessor would also have to repay to
the lessee the rental which had been paid for the par-
ticular year that they had recaptured the property
(55a). Pharo said he would return that afternoon
with a sample copy of the lease for submission to the
Home Office at Holland, Michigan. Pharo asked Van-
denBos if he had authority to make a four year lease
and VandenBos replied that he had not; that the sec-
retary of the corporation, Mr. A. W. Tahaney, was the
person to make the lease. Pharo did not come back
that afternoon, but the next day he came again—
not bringing the lease, however—and discussed with
VandenBos as to how they would arrive at the acreage
of farmable land—and he told VandenBos that a
planometer survey would be made. VandenBos told
Pharo he was going out to the main office in Holland,
Michigan, shortly, and wanted a copy of the proposed
lease to take with him. Pharo testified, when called
for cross-examination: "Q. Did he say what he [Van-
denBos] was going to do in Holland, Mich.? A. Well,
he said they [the home office] had to sign the lease."

months before the expiration of the term of the lease. The right
was reserved to the lessor to sell any part of the leased premises
during the term of said lease, lessor however agreeing to refund
the pro-rata share of the rental on the property which had been
sold and to pay crop damages as follows: During the first year
of the lease, at the rate of $16 per acre; during the second year,
at $12 per acre; during the third year at $8 per acre, and during
the fourth year at $4 per acre. It contained other clauses relative
to waiver of notice to quit, exemption laws, etc. and confession
of judgment in ejectment not material here.

(56a). After Pharo had recited the abovementioned conditions of the printed lease, VandenBos said, "That's fair enough". Then Pharo said, "Well, we're next door here. Shall we go on?" To which VandenBos replied "O. K. ...... I'm only too glad to get some rental out of this place, because in the past we used to give it out for nothing." In response to questions of the court, Pharo testified as follows: "By the Court: Q. Now, Mr. Pharo, this isn't quite clear in my mind. As I understand you, there was no written lease ever signed between the plaintiff company and the defendant company? A. No, sir. Q. And there was no verbal lease agreed upon between any officer having authority on the plaintiff's side and one having authority on your side? A. No, sir. Q. In other words, you would say to the jury and myself that no lease of any kind existed between the two companies, verbal or written, between the officers? A. Except between VandenBos and myself. Q. Well, he was an executive officer, plant manager, I think he said he was. A. Yes. Well, that was the only— Q. But whatever that conversation would be worth, that's the only agreement that could be said to exist, if that has the strength of an agreement? A. That's correct."

No copy of the lease or form of lease was given VandenBos before he left for Holland on May 1—nor was any sent him there. He returned to Bethlehem about May 30, and found that in the interim the land had been plowed and planted. In August the crop of soy beans was harvested by defendant. No copy of the proposed lease was given VandenBos until sometime in October when he sent for Pharo and asked for it, and got it the next day. He sent it to the Home Office, which, by Mr. Tahaney the secretary, wrote the defendant company on October 14, 1940, and again on October 24, that in view of uncertain industrial conditions they did not want to tie the property up for such a long

period, since the land might be more valuable for industrial purposes than for the small rental involved. But they offered to rent the land to defendant from year to year. They informed Mr. Pharo that they had no knowledge of defendant's proposed lease of the ground until October 4, 1940, when Mr. VandenBos had forwarded the lease to them and told them to bill defendant for $124.50 for the use of the land for the soy bean crop. Mr. Pharo's own letters in reply negatived any claim on his part, at that time, that a four year oral lease had actually been entered into. For example, "When we made our first contact with VandenBos, we told him we'd put in soy beans to tame the land, which was overgrown with sumac and other weeds and then plant alfalfa next year. Had we known that you'd refuse to consider a four year lease we would not have used your land at all, as our expenses of clearing the tract was over $200, besides the cost of ploughing." Mr. Pharo did not deny that VandenBos had told him he did not have authority to sign a four year lease. He admitted (113a) that he had agreed to bring the lease to VandenBos before the latter went to Holland, "so Mr. VandenBos could have the officers of the company sign it". He made *none* of the *quarterly payments* of rental *in advance* called for under the lease, and gave no reasonable excuse for not having done so, if an oral lease had actually been entered into. He stated that under normal circumstances one sowing of alfalfa should last for four years without re-seeding and that it cost $16 to put in an acre of alfalfa, and *hence* it was necessary to amortize their seeding investment of *alfalfa* over a *four* year period at the rate of $4 per acre per year. None of this applied to soy beans, which was the crop Mr. Pharo asked and obtained permission of Mr. VandenBos to enter upon plaintiff's land and sow. The sowing of that crop was merely to get rid of the weeds, after which the land would be ready for planting the alfalfa crop and a four year lease.

It was only the plaintiff's demand for the rental of $124.50 that led Mr. Pharo to claim that an oral lease for four years had been entered into with VandenBos, who, he knew, had no authority to make such a lease.

The evidence in the case—Pharo's own testimony—not only does not establish that a clear, explicit and unambiguous oral contract of lease for four years had been entered into; but it establishes, on the contrary, that Pharo knew that VandenBos had no authority to make such a lease; and that VandenBos' permission to Pharo to go on the land, was to prepare and sow soy beans—a one year crop—and that a written lease for four years covering a planting of alfalfa would be given VandenBos to be submitted to plaintiff's home office for approval and execution by the officers of the plaintiff company there; and that when, after the soy bean crop had been harvested, plaintiff's officers refused to sign a *four* year lease for planting alfalfa, but offered instead a lease from year to year, defendant would not accept it; that defendant was not evicted, but left when Pharo learned that plaintiff's authorized officers would not make a four year lease. Under the defendant's own evidence, it has no legal claim for any damages, by way of set-off, counterclaim or otherwise. Furthermore, clearing the ground preparatory to plowing and sowing is not a permanent improvement inuring to plaintiff's benefit: *Bender's Admrs. v. Bender,* 37 Pa. 419, 420; *Rineer v. Collins,* 156 Pa. 342, 27 A. 28; *Thuemler v. Brown,* 18 Pa. Superior Ct. 117, 120, 121.

No oral four year contract was ever entered into by VandenBos, or by anyone authorized to make a four year lease. To permit a recovery by defendant, in the circumstances of this case, as over against the plaintiff's claim for use and occupation, "would be tantamount to ...... setting aside the Act of March 21, 1772." *(Mott v. Kaldes,* 288 Pa. 264, 276, 135 A. 764, 768, adopting the language of the lower court, MAXEY, J.).

The rental fixed in the abortive lease, $5 per acre per year, was proper to be considered as to the value of the use and occupation (*Stover v. Cadwallader,* 2 Penny. 117), but it was qualified by the testimony of Mr. Pharo, called by plaintiff as a witness, as on cross-examination, to the effect that the rental of $5 per acre per year was based on a four year term—that on a one year basis the use and occupation was of no value.

For these reasons we cannot order judgment non obstante veredicto to be entered for the plaintiff. The case will have to be sent back to the lower court, so that a jury can fix the value of the use and occupation of the plaintiff's land by the defendant.

Judgment reversed with a venire facias de novo.